# DECISIONS

OF THE

# Supreme Court of Florida.

## JANUARY TERM, A. D. 1898.

THE FLORIDA SOUTHERN RAILROAD COMPANY, APPELLANT, vs. S. CLINTON HILL AND JOSEPH H. HILL, APPELLEES.

1. Where the pleader is in doubt as to whether he is entitled to one kind of relief, or another, upon the facts alleged in a bill in equity, he may frame the prayer in the alternative, so that if he is not entitled to the one, he may obtain the other. If, in such case, upon the allegations of the bill the complainant is entitled to either kind of relief prayed, the defendant can not demur because he is not entitled to the other; the remedy being to insist at the hearing that complainant be confined to such relief only as he is entitled to under all the circumstances of the case as then presented.

2. Where a railroad company, possessing the power of eminent domain, enters upon the land of another without his consent and without condemnation, builds thereon its railroad tracks, and appropriates to its use a right of way over such land, the owner may waive the tortious taking, elect to regard the act of the company as done under the right of eminent domain, and demand and recover just compensation; in which case he assumes to the company the relation of a vendor who sells real estate on a credit, and while he holds the title, equity will enforce his claim against the land as it would a vendor's lien. (Taylor, C. J., dissenting.)

3. Where a land owner waives the tortious taking of his property for the purpose of a right of way by a railroad company possessing the power of eminent domain, and elects to regard the

act of the company as done under the right of eminent domain, he may resort to equity in the first instance to establish the amount due him for compensation, and to enforce same by charging the company's interest in the land and the improvements thereon for its payment. (Taylor, C. J., dissenting.)

4. Where a land owner has acquiesced in the taking of his property for a right of way by a railroad company, so that he is estopped from dispossessing the company, an injunction should not be granted to coerce the payment of compensation due for such land, but a court of equity may declare the amount due for compensation to be a lien upon land and improvements, and decree foreclosure of such lien and sale of the property to satisfy same. (Taylor, C. J., dissenting.)

Appeal from the Circuit Court for Polk County.

*Statement.*

On November 23, 1893, appellees filed their bill of complaint against appellant in the Circuit Court of Polk County, alleging that appellees, complainants therein, were the owners in fee simple of forty acres of land therein described as being within the corporate limits of the town of Bartow, in said county; that the land was of great value to complainants for various purposes; that about eight years prior to the filing of the bill the Florida Southern Railway Company, a corporation then doing business in Polk county, unlawfully and wrongfully entered upon said land which was then owned by, and in possession of, complainants, and did grievous wrongs and trespasses committed by wrongfully building, constructing and erecting its right of way and railway tracks upon and across said land; that for a long time thereafter said railway company continued to use without authority of complainants, in any way given, and without complainants' consent or assent thereto, its said rights of way and railway tracks which it had unlawfully and without complainants' permission, erected

upon said lands; that said railway company had never compensated complainants for taking said land, though it remained in the continuous use thereof for a long time thereafter; that the construction of said right of way and railway tracks had greatly depreciated the market value of said land; that the tracks and rights of way took up a good portion thereof, and cut up and divided the same so as to make it less salable and less profitable for other purposes. Upon information and belief it was alleged that the defendant was a railroad corporation doing business in Polk county, and was the successor of, and distinct from, the Florida Southern Railway Company, which latter company then had no existence; that complainants knew not the time when defendant company became the successor of said railway company, but from general information alleged that it had not been long prior to the filing of the bill, complainants' first knowledge thereof dating from September 4, 1893. It was further alleged that defendant was pretending to be rightfully possessed of complainants' land as used for rights of way and railway tracks unlawfully and wrongfully placed thereon by the Florida Southern Railway Company as aforesaid; that defendant had never paid complainants any compensation for said land or for the use thereof in any way, and refused to vacate and surrender same to complainants, and was then in the use thereof without complainants' authority or permission in any way given; that defendant's use of the land was unlawful and wrongful and a deprivation of complainants' constitutional rights, in that their property was taken by defendant without due process of law, and without compensation therefor; that complainants were entitled to compensation for their land, and the amount thereof was a lien upon same, together with the improvements thereon.

The bill prayed for a decree that the defendant had no right to use complainants' land in manner aforesaid; that the court fix a reasonable time in which defendant, if it saw fit, might take condemnation proceedings for the purpose of condemning complainants' lands for its use, and to pay complainants therefor; that in default of such proceedings and payment, the defendant be enjoined and restrained from using complainants' said land for its tracks and rights of way, and from interferring with complainants in restoring their lands to the condition in which they were previous to the tracks being built thereon, or if it was not meet and proper for the court to grant the foregoing prayer, that then the court should, by proper direction, ascertain what amount of compensation the complainants were entitled to, for the taking of their said property as aforesaid; that the amount thereof be decreed to be a lien upon the property so taken, together with the improvements placed thereon, and in default of payment of said amount within a time to be fixed by the court, that the land so taken and the improvements thereon be sold to satisfy said lien decree. The bill also prayed for general relief and subpoena.

The defendant demurred to this bill upon the following grounds: 1. That it was vague and insufficient. 2. The bill failed to allege when the Florida Southern Railway Company first occupied the lands or converted same to its own use. 3. That complainants had an adequate remedy at law. 4. That the bill shows such acquiescence by complainants in the alleged occupancy by defendant and its predecessor, as that they would not now be entitled to the remedy of injunction. 5. That the bill failed to show what damage, if any, has been done to complainants. 6. That the prayer in the bill was inconsistent with the allegations. This demurrer

was overruled February 2, 1894, with leave to the de-
fendant to answer by March rules, 1894. Defendant
having failed to file any plea or answer, a decree *pro
confesso* was entered against it March rules, 1894, and
the cause was subsequently referred to a master to take
testimony in behalf of complainants, March 29, 1894.
On April 11, 1894, the court upon consideration of the
pleadings and the testimony taken by the master de-
creed: 1. That the property taken by defendant from
complainants was of the value of $1,000; that complain-
ants were entitled to said sum from defendant as com-
pensation for the land so taken by it, and upon which
its tracks were then laid and placed, describing same;
that defendant pay to complainants said sum within
thirty days, and in default thereof, and non-compliance
with the succeeding paragraph of the decree, that the
complainants have the relief granted by the third para-
graph. 2. That if defendant should within sixty days
from the date of the decree take the necessary condem-
nation proceedings to condemn complainants' land upon
which the defendant's tracks and rights of way were
situated, and pay to complainants the amount of com-
pensation ascertained under such condemnation pro-
ceedings, promptly, and in accordance with law, and
without any unnecessary delay, then the first paragraph
of the decree should be suspended, and of no effect. 3.
That in case the defendant failed or refused to pay com-
plainants the sum of money as mentioned in paragraph
one within the time specified, or failed or refused to
take necessary condemnation proceedings as mentioned
in paragraph two, within the time specified therein, that
then the defendant should be restrained and enjoined
from the possession of said land so occupied by it, and
the use thereof, for the purpose of running its trains,
cars, engines, &c., over the tracks thereon for any pur-

pose whatever, and restrained and enjoined from inter-fering with the complainants in restoring their land to the condition as they saw proper, in which it was before the tracks and rights of way were placed on said land by the Florida Southern Railway Company; that the defendant, its agents, servants and employes of any kind should be enjoined from entering upon said land for the purpose of disturbing or interfering with the complainants' use of same. 4. That in case the defendant compensated the complainants for their land as mentioned in paragraph one, then the defendant should have the right to use and enjoy possession of the land without interference on the part of complainants, or of any one claiming under them; that in case defendant failed or refused to comply with the terms of paragraph one or paragraph two of the decree, then the decree granted by paragraph three should be operative and of force from the date of the decree.

From this decree the defendant entered the present appeal on May 8, 1894, and the errors assigned are that the court erred in overruling defendant's demurrer, and in rendering final decree.

R. W. & W. M. Davis, for Appellant.

J. W. Brady, for Appellees.

CARTER, J.:

1. We discover no error in overruling the first, second and fifth grounds of the demurrer. Indeed the appellant's counsel have not argued them in their brief, and, under our uniform rulings, they are for that reason to be treated as abandoned.

It is not suggested in what respect the prayer of the bill is inconsistent with its allegations; nor do we

perceive that it is so.  The prayer is in the alternative, it is true, but that fact does not make it inconsistent, either in itself or with the allegations of the bill.  It is entirely proper in all cases where the pleader is in doubt as to whether he is entitled to one kind of relief, or another upon the facts as alleged in the bill, to frame his prayer in the alternative, so that if he is not entitled to the one, he may obtain the other, under such alternative prayer.  1 Beach's Modern Equity Practice §114.  This disposes of the sixth ground of the demurrer.  In such cases, if the complainant is entitled to either relief prayed, the defendant can not demur to the bill because the complainant is not entitled to the other.  His remedy is to insist at the hearing, that complainant be confined to such relief only as he may be entitled to under all the circumstances of the case as then presented.  1 Beach's Mod. Eq. Pr. §114; Western Insurance Co. v. Eagle Fire Insurance Co., 1 Paige Chy. 284.  If, therefore, the bill stated a case entitling complainants to relief under either branch of the alternative prayer, the fourth groud of demurrer, which took exceptions to only one kind of relief embraced therein was properly overruled.

2.  The bill in the present case charged a wrongful and illegal taking of complainants' property.  The allegations of the bill in connection with the prayer show clearly that while the original taking and subsequent possession thereunder were without complainants' consent, and without condemnation proceedings, yet complainants did not claim any relief on that account, but on the contrary the complainants waived the tortious acts, ratified the defendant's possession, and regarded the taking and possession as done under the power of eminent domain.  The object of the bill was not to dispossess the defendant because of wrongful taking, nor

to enjoin trespasses upon or further use of the land by the defendant, but to enforce payment of the compensation justly due complainants for their land either by means of an injunction, or by charging the specific land with its payment. For the reasons hereinafter stated we do not think the remedy by injunction prayed in the bill was available to the complainants, but in considering the third ground of demurrer we will inquire whether the compensation due for the land taken by defendant and its predecessor constituted an equitable charge or lien upon the land. In the case of Pensacola & Atlantic Railroad Co. v. Jackson, 21 Fla. 146, the bill prayed an assessment of the damages sustained by a landowner by reason of the wrongful taking of his land by a railroad company for the purpose of a right of way and the operation of its railroad thereon; and that the company be enjoined from further operation of its road until the amount so ascertained was paid. It was held that the landowner by reason of acquiescence in the alleged wrongful acts of the railroad company had waived his right to an injunction, but that he had not lost his title to the land and could maintain an appropriate action to recover his damages. It was further held that there was no necessity of invoking the aid of a court of equity to assess his damages on the ground of irreparable injury, or for the prevention of a multiplicity of suits, because where the injury was of a permanent nature, such as that caused by the construction and operation of a railroad across land, the damages recoverable at law would include the entire injury, and therefore there could be no danger of further litigation for injuries arising from the same cause. In Jacksonville, Tampa & Key West Ry. Co. v. Lockwood, 33 Fla. 573, 15 South. Rep. 327, it was again held by this court that the entire damage done to one's property in such cases could be

recovered in a single action of trespass, and that damages in such cases should not be limited to such as had accrued prior to the institution of the suit. This court. has never determined whether a landowner, under the circumstances disclosed in these cases, could enforce a lien for his damages, in the nature of compensation, upon the property taken. In Walker v. Ware, Hadham and Buntingford Railway Co., 12 Jur. 18, it was held by an English court that the amount of damages for purchase money and compensation, due a landowner from a railroad company, ascertained by means of an agreement for arbitration, was a lien upon the lands sold, in the nature of a vendor's lien, and could be enforced as such in a court of equity; that although the rights of the public should in such cases be considered, yet the railroad company could not take property without paying for it, and then say it was for the interests of the public that the property should be used by them, and so deprive the vendor of his lien, because the public could have no rights springing from injustice to others. Acting upon the intimation of Judge REDFIELD, in McAulay v. Western Vermont R. R. Co., 33 Vt. 311 S. C. 78 Am. Dec. 627, the Supreme Court of Vermont in Kittle v. Missisquoi R. R. Co., 56 Vt. 96, held that although the vendor's lien had been expressly abolished in that State, yet, in a case where a railroad company had entered upon land by agreement with the owner, with an understanding that the damages caused thereby should be ascertained by arbitrators, the amount so ascertained became a charge or lien upon the land, in the nature of a vendor's lien, which equity would enforce by appropriate proceedings. See, also, Kendall v. Missisquoi & Clyde River R. R. Co. *et al.*, 55 Vt. 438; Adams v. St. Johnsbury & Lake Champlain R. R. Co. *et al.*, 57 Vt. 240; Bridgman v. St. Johnsbury & Lake

Champlain R. R. Co., 58 Vt. 198, 2 Atl. Rep. 467; Redfield on Railways, *240. So, the Supreme Court of Ohio, in Dayton, Xenia & Belpre R. R. Co. et al. v. Lewton, 20 Ohio St. 401, held that where a landowner agreed with a railroad company to "release the right of way, and the right to enter upon and construct its railroad" for a certain consideration, such landowner had an equitable lien, in the nature of a vendor's lien, for the price agreed to be paid, and could enforce it in equity by foreclosure; that the lien applied as well to the sale of an easement in, as to a sale of the title to, or an estate in, the land. In Western Pennsylvania Railroad Co. v. Johnston, 59 Pa. St. 290, the principles upon which the landowner's claim for compensation or damages in the nature of such becomes a charge upon the land itself even in the hand of subsequent holders, are very clearly stated, and applied in a legal proceeding. See, also, Gilman v. Sheboygan & Fond du Lac R. R. Co., 40 Wis. 653. It has been frequently held that where damages have been ascertained in the statutory mode, the amount becomes an equitable charge or lien against the lands and the improvements thereon, even in the hands of successors to the original taker, and that such lien or charge could be enforced in equity, though the courts differ as to the specific relief applicable in such cases, some holding that injunction will be granted to restrain the company's use of the land until it pays the damages; others, that the whole line of railroad will be ordered sold; and others, that the particular portion covered by the lien only, will be ordered sold, to pay the lien indebtedness. Drury v. Midland Railroad Co. et al., 127 Mass. 571; Gillison v. Savannah and Charleston R. R. Co., 7 Rich. (S. C.) 173; Mims v. Macon & Western R. R. Co., 3 Kelly (Ga.) 333; Manchester &

Keene R. R. Co. v. Keene, 62 N. H. 81, text 122 *et seq.*; Provolt v. Chicago, Rock Island & Pacific R. R. Co., 69 Mo. 633; Cooper v. Anniston & Atlantic R. R. Co., 85 Ala. 106, 4 South. Rep. 670; Mills on Eminent Domain, §144; Randolph on Eminent Domain §§228, 296, 385. In Organ v. Memphis & Little Rock R. R. Co., 51 Ark. 235, 11 S. W. Rep. 875, the same principle was applied to a case where a railroad company took the land without agreement, and without condemnation; the court holding that where the property is seized *in invitum* by the company, though constituting a trespass, yet the owner may elect to regard the act of the company as done under the right of eminent domain, and demand and recover just compensation; that in such case the owner assumes to the company the relation of a vendor who sells real estate on a credit, and while he holds the title, equity will enforce his claim against the land, as it would a vendor's lien. See, also, Ashley v. Little Rock, 56 Ark. 391, 19 S. W. Rep. 1058. This view impresses us as being eminently just, and correct in principle. For the transaction is nothing more nor less than an implied sale of an easement in the land; induced, it may be true, by the compulsory features of the power of eminent domain, the landowner knowing that he can not prevent the taking of his property under such power; and the company knowing that it must pay for it if it does take or keep it. Even where the original taking is tortious, because against the consent of the owner, and without condemnation, it is, nevertheless, necessarily referable to the power of eminent domain, whose express provisions protected and perpetuated by organic law require that compensation be made for the property taken. The company can have no just cause of complaint if the landowner ratifies such tortious taking, by electing to

treat its possession thereunder as valid, and asking to be compensated. United States v. Great Falls Manuf'g Co. 112 U. S. 645, 5 Sup. Ct. Rep. 306; Cohen v. St. Louis, Fort Scott and Wichita R. R. Co., 34 Kansas 158, 8 Pac. Rep. 138, S. C. 22 Am. & Eng. R. R. Cases 116; Longworth v. City of Cincinnati, 48 Ohio St. 637, 29 N. E. Rep. 274, S. C. 35 Am. & Eng. Corp. Cases 152. It certainly can not expect that a court of conscience will permit it to retain the property under these circumstances and yet deny the owner the right to subject such property to the payment of the compensation rightfully due for it. The compensation due the owner is always in part, and frequently wholly, purchase money for a perpetual interest in, or easement over, the land, and inasmuch as equity always implies a lien for the purchase price upon a voluntary sale upon credit by the owner, it should for a stronger reason imply one for the same purpose, upon a compulsory sale under the power of eminent domain. The defendant and its predecessor in the present case have received the same rights and interests in complainants' property which they would have secured by regular condemnation proceedings, i. e., the right to the perpetual use of the property for the purposes of their incorporation, for though the complainants retain the legal title to the land, they can not use it to oust defendant's possession. They have ratified such possession by electing to treat it as valid in order to enforce a lien for compensation, even if they are not (under the decisions in Pensacola & Atlantic R. R. Co. v. Jackson, 21 Fla. 146, and Griffin v. Jacksonville, Tampa & Key West Ry. Co., 33 Fla. 606, 15 South. Rep. 338,) estopped by acquiescence from using their legal title to dispossess the defendant. In cases of this character we think the landowner holds the legal title as security for the payment of the money due him for com-

pensation, and that he may resort to equity, in the first instance, to establish the amount of his recovery, and enforce the same by charging the company's interest in the land and the improvements thereon for its payment. 3 Pomeroy's Eq. Jur. §1260 *et seq.*, and note 1 on page 1941. Our statutes providing proceedings for ascertaining the damages in eminent domain cases, do not authorize the landowner to begin the proceedings. The company only can become the actor thereunder. They therefore do not furnish an adequate and speedy legal remedy to the landowner for the collection of his compensation. The remedies by injunction and ejectment are not available to collect the damages, but only to recover possession of the property, and according to our previous decisions cited above, they would not be available for any purpose after the landowner had acquiesced in the building and operation of the road. It is true that at law in an action of trespass, the amount of the landowner's damages can be ascertained and adjudged against the defendant, but the law can neither declare that its award is a specific charge upon the land, nor enforce the implied lien or equitable charge against the specific property. This charge upon the land being a creature of equity, is properly enforced in a court of equity. We think the third ground of the demurrer was properly overruled.

The bill alleges that the original taking of complainants' land occurred about eight years before the filing of the bill. As the demurrer does not present the question, we do not consider whether the remedy here sought was stale, or barred by limitations.

3. We do not think the final decree was justified by the facts of the bill; nor do we think that payment of compensation for complainants' property should be coerced through the medium of an injunction, where the

complainants have for eight years acquiesced in the taking of their property without objection, and now ratify same by asking to have their damages assessed and enforced as an equitable charge or lien upon the land. It has been held by the English courts that where a landowner has an equitable lien as security for the purchase money of lands acquired by railroad companies for corporate purposes, he may enforce such lien in equity by an order to sell the property covered by such lien for the payment of the lien indebtedness, but that an injunction will not be granted to restrain the operation of the company's road until payment of the amount due the landowner. Munns v. Isle of Wight Ry. Co., L. R. 8 Eq. Cases, 653; Lycett v. Stafford & Uttoxeter Ry. Co., L. R. 13 Eq. Cases, 261. This view commends itself to our judgment, especially in view of our previous decision in the case of Pensacola & Atlantic R. R. Co. v. Jackson, 21 Fla. 146, a case somewhat similar in its main facts to the present one, so far as the relief by injunction is concerned. We there held that the acquiescence of a landowner in the illegal taking of his land, for a period of nine months, would debar him from an injunction restraining the operation of the company's road, though he was not barred of other remedies to collect his damages.

The final decree of the court below is reversed, with instructions to ascertain, either from the evidence already taken in the cause, or from other evidence to be taken if desired by complainants, the amount of compensation due complainants; to declare same a lien upon the land taken, and to decree a foreclosure of such lien and sale of the land in default of payment of the amount so ascertained, and for such other and further proceedings as may be consistent with this opinion and chancery practice.

TAYLOR, C. J., dissenting.

I am unable to agree to the conclusions reached in this case, and I think that the defendant's demurrer to the bill should have been sustained and the bill dismissed, upon the ground that the complainants have a *complete remedy at law*, and that, therefore there is no jurisdiction in equity. The bill, in short, alleges that the complainants were the owners of a certain tract of land, and were in the quiet and peaceful possession thereof. That the defendant railroad company wrongfully, and without their sanction or consent in any manner given, appropriated the same, built its road thereon and has ever since occupied and used it for the purposes of its roadway, without having paid any compensation therefor, and without taking any steps to condemn it under the right of eminent domain.

The bill makes out a plain and clear cut case of a tortious trespass upon, and *wrongful* seizure of, the complainants' land, nothing more and nothing less, and in the eyes of the law it can not be comprehended in any other light than that of *a tort*, and for such torts the law courts afford an ample and complete remedy in the action of *trespass quare clausum fregit*. In which action this court has held, in Pensacola & Atlantic R. R. Co. v. Jackson, 21 Fla. 146, and in Jacksonville, Tampa & Key West Ry. Co. v. Lockwood *et al.*, 33 Fla. 573, 15 South. Rep. 327, that, in a case like this, the plaintiff can recover the *entire* damage sustained, including the value of the land wrongfully appropriated. In Pensacola & Atlantic R. R. Co. v. Jackson, *supra*, this court, following the universal doctrine held elsewhere, has said that in such cases of *wrongful* taking of lands by railroad companies the owner does not lose his title to the land, but he still holds the title and occupies no other status

than that of a man whose property is trespassed upon. The courts can not admit that such *wrongful* seizure of lands by railroad companies so *divests the owner of his property* as that he has nothing of it left but a *bare lien* that equity can enforce in his favor.  To make any such admission is to assert, in the teeth of the Constitution, that the citizen's property can be effectually appropriated against his consent, and without just compensation being *first paid* therefor.  I can not consent to the admission.  On the contrary, my view is that the trespassing railroad company, individually considered, acquires by its tortious taking no rightful interest in, or ownership over, the land whatsoever upon or out of which anything in the nature of a lien can spring or rest, but the owner still has the *paramount* right, title and interest therein and thereto, not simply a *bare lien* thereon that he has to resort to the courts to enforce.  If it be true that the tortious taking does not *divest title,* how can a party claim or enforce in his own favor a *lien* upon property to which he already has the *absolute* title, no element of which has been taken from him, except that of actual *possession?*  At the end of the enforcement of any such supposed *lien* in the court of equity, does he acquire any other, stronger or different right in, or title to, the land taken than he held before such enforcement?  Certainly not.  Such a proceeding is but the chasing of the title around a circle, starting with it admittedly to be in the owner and ending by asserting it to be still in him.  Without the owner's consent there is but one way to divest him of his property for public use, and that is by the proper exercise of the right of eminent domain.  If this is not done the attitude of the railroad to the owner is that of a *tort feasor,* and so long as it occupies that attitude, the courts can apply to it only such remedies as the law affords for the redress of torts.