100 So.2d 57 (1958)
Lottie Sykes DOWNING, Appellant,
v.
Preston BIRD and City of Homestead, Appellees.
Supreme Court of Florida.
January 31, 1958.
*59 Rutherford & Housen, Miami, for appellant.
Hudson, McNutt, Campbell, Isom & Rearick, Miami, for Preston Bird, and Thomas S. Hodson of Turner & Hodson, Homestead, for City of Homestead, appellees.
O'CONNELL, Justice.
The appellant, Lottie Sykes Downing, as plaintiff, on March 18, 1954 filed a bill of complaint against the defendant-appellees, Preston Bird and the City of Homestead. She sought a mandatory injunction to require the parties to remove a street surface, i.e. paving, from a parcel of land, approximately fifty feet in width, alleged to be owned by her, and to require the removal of a fence and building, alleged to have been constructed by the defendant Bird so as to encroach on her said parcel of land.
In her amended complaint, plaintiff alleged that she was the owner of a tract of land having a width of fifty feet (50'); that there had been created on this tract of land and for the use of plaintiff a roadway approximately ten feet (10') in width which road led to a dwelling house on another tract of land, formerly but no longer owned by plaintiff, and that the present owner of the dwelling house and other tract of land has other means of access to said dwelling and does not claim any right of easement on plaintiff's property; that defendant Bird had constructed a fence and building which encroached on her property; that between November 1951 and August 1952 defendant Bird or the defendant City without plaintiff's permission had constructed on her tract of land a "permanent type asphalt road" which she alleged to be a continuing and permanent trespass and in derogation of her title; and that plaintiff's husband in February *60 1952 had constructed a barrier across said road and had been arrested therefor by one of the policemen of the defendant City. She asked that the defendants be required to remove said encroachments and street and that she be awarded damages and such other relief as may be equitable.
In the answers of the defendants it is admitted that the City constructed the permanent type asphalt road, and that the plaintiff's husband was arrested for erecting the barrier. For affirmative defenses it is alleged that the land of the plaintiff was one of the main thoroughfares of the City and that the public had used it continuously and uninterruptedly for a period of more than twenty years prior to the institution of the suit, and that the street in question had been constructed by it more than four years prior to the institution of the suit and had been maintained, kept in repair and worked continuously and uninterruptedly by the City since its construction, to a width of approximately fifty feet (50') and therefore under F.S. § 341.66, F.S.A. the said lands were deemed dedicated to the public for the entire width to which it had been maintained and that title to said lands was vested in the City. It is not contended that the road is a way of necessity.
To the answer of the City, the plaintiff filed a reply alleging that the City was estopped to claim the tract of land for the public because the City had continuously assessed and collected taxes on said lands for many years prior to the institution of this suit.
After final hearing in the cause the chancellor entered a final decree in which he stated simply that he found "that the equities of this cause are with the Defendants" and dismissed the plaintiff's bill of complaint with prejudice.
On appeal it is apparent that the plaintiff would be content for the City to take her lands, as it has taken a portion thereof, but contends that the City should be required to pay her therefor. There no longer appears to be any contention by plaintiff that the defendant Bird's fence or building encroaches on her lands and no further mention will be made thereof.
We have previously held that a property owner whose land has been appropriated, without his consent, by a governmental or private body vested with the power of eminent domain, may waive the tortious taking and resort to equity in the first instance to establish the amount of and to require payment of compensation for his lands. Florida Southern R. Co. v. Hill, 1898, 40 Fla. 1, 23 So. 566; Rosenbaum v. State Road Dept. of Florida, 1937, 129 Fla. 723, 177 So. 220, and like cases. However, in the case now before us, the plaintiff, in her pleadings, did not pray for relief in the alternative, i.e. either for a mandatory injunction requiring removel of the road or compensation for the taking, nor did she in any way indicate her desire to waive the alleged tortious taking by the City and accept compensation for her land, although she now is apparently willing to do so. In her pleadings she sought only the removal of the road and encroachments, and damage done her land by the placing thereon and removal therefrom. Therefore on this appeal we cannot say that it was error on the part of the chancellor not to award compensation to plaintiff for the appropriation of her land by the City.
However, inasmuch as our decision in this case results in the cause being remanded for further proceedings, the plaintiff should, if she desires, be given the right to amend her complaint so as to pray, either in the alternative or solely, for compensation for any taking by the City.
We will next consider the plaintiff's argument that the City is estopped to claim the plaintiff's lands because it assessed and collected taxes thereon. Plaintiff has cited no law in support of this contention. Defendant Bird cites only the case of Campau v. City of Detroit, 1895, 104 Mich. 560, 62 N.W. 718. However, we think cases decided by this Court sufficiently answer the contention.
*61 It is clear from our decisions in the cases of Levering v. City of Tarpon Springs, Fla. 1957, 92 So.2d 638, and Trustees of Internal Improvement Fund v. Claughton, Fla. 1956, 86 So.2d 775, in both of which the assessment and collection of taxes were urged as constituting an estoppel of the public bodies involved, that the assessment and collection of taxes is not alone conclusive in forming the basis for estoppel but rather is one item to be considered with other evidence of estoppel.
Too, it must be remembered that the City here is acting and may act for the public and as pointed out in the Campau case, supra, the public may acquire an easement in land separate and apart from the rights of a City, and in spite of actions of a City.
We, therefore, hold that while the assessment and collection of taxes is a fact to be considered, it does not operate here to estop the City from claiming either an easement in or ownership of the subject lands.
The chancellor did not give his reasons for dismissing the plaintiff's complaint, but since it was proved that the plaintiff was the record owner of the lands in question, it is clear that he must have determined either
(1) that the defendant City had acquired title to plaintiff's lands by operation of law under F.S. § 341.66, F.S.A., or
(2) that the public had acquired, by adverse user, an easement for roadway purposes on said lands.
Both of these questions arise out of affirmative defenses asserted by the defendants. The defendants had the burden of proving them.
F.S. § 341.66, F.S.A., as it was in effect during the time involved in this suit, in part provided that any road, street or portion thereof which had been constructed by a municipality and maintained, kept in repair or worked continuously and uninterruptedly for a period of four years, by either or both a county, municipality or the State Road Dept., would be deemed dedicated to the public to the extent in width that it had been actually so maintained, kept in repair and worked, and that such dedication "* * * shall be conclusively presumed to vest in the * * * particular municipality * * * all right, title, easements and appurtenances * * * being the fee simple title * * *." It further provided that the filing of a map showing the lands and reciting that they have vested in the municipality, duly certified to by the Mayor and Clerk, "* * * shall be taken as prima facie evidence of the ownership of such lands * * * by the * * * municipality." Laws 1951, c. 26547.
We have carefully read the record in this cause and studied a map of the City of Homestead put in evidence by the defendants.
The map has thereon wording reading: "approved by City Ordinance No. 281, Dated May 7th, 1945" and bears signatures which purport to be that of the Mayor and City Clerk. There is also wording reading: "Revised May 1954 G.A. Cranshaw & Associates." Assuming that the signature of the Mayor and Clerk as set forth on the map is sufficient certification to satisfy the statute, there is nothing whatsoever set forth on the map reciting that the portion of the street which we are now concerned with, or any other street, has or is claimed by the City to have vested in the City of Homestead. Under the subject statute the filing of a map with such statement is prima facie evidence of the City's title.
For the reasons above stated the map does not establish prima facie evidence of title in the City. While the map has been helpful in understanding the case, it has no probative value on the issues in this case.
The defendant City argues that the filing of a map as provided in said statute is not the only way in which it can prove its acquisition of title thereunder and we agree. The City could, without the filing *62 of such a map, prove its construction and maintenance of the road, continuously and uninterruptedly, for the prescribed period.
As to proof of the construction and maintenance of the street in question we find no positive proof that the City had constructed and maintained the road in question, or any part thereof, more than four years prior to the institution of this suit by the plaintiff, which act by the plaintiff would unquestionably toll the running of the statute.
The defendants offered the testimony of four witnesses.
Defendants' witness Geronimo, who testified in a deposition taken on July 14, 1955, stated that he did not know who paved the street; that he did not know the date it was paved, but that it had "been paved over five years."
Defendants' witness Musselwhite, who was then serving his 6th consecutive year as a member of the City Council of Homestead and had also served four years from 1930 to 1934, testified that he was the "street committeeman" for the City; that the road was paved in its present fashion by the City about 1950 or 1951; that he didn't know what the City did about the road prior to 1950 or 1951; that the rock road had been paved, he believed in 1925, but he didn't know who did it; and that during his service on the City Council no action had been taken to appropriate or declare the street a public way. When asked about the nature of the road, prior to being paved by the City, he said "Well, it was a little rock road; you know how those roads were built down there to begin with. It is a little rock road."
Defendants' witness Murray testified that he had lived in Homestead since 1917 and had known the road in question since 1918; that he had worked across the street from plaintiff's property and the road in question since 1938 and saw the road every day; that the road in question was paved in "* * * 1951; late 1950 or 1951"; that prior to its being paved it was just a rock road; it "* * * was a way to get up to Mrs. Sykes' house * * *."; that he never saw anybody in particular doing any work on the road until it was paved in 1950 or 1951.
Defendant Bird testified he had and presently owned the property which abuts plaintiff's on the south and had owned property to the west across Krome Ave. since 1937; that he had known the road to exist for twenty or twenty-five years; when asked if he remembered when the road was paved, he answered, "offhand, I could not say the first time that road was paved. My recollection, * * * (is) the City repaved that street within the past ten years time."
On the same question the plaintiff's positive evidence in essence was that the road had actually come about through driving vehicles across the property with a resulting set of wheel tracks which constituted the roadway; that the only work done on the road prior to the paving by the City of the 250 feet depth was hauling and placing of dirt or rock thereon by plaintiff's father, Mr. Sykes, or persons hired by him, and by plaintiff's husband; and that the road was paved sometime between Thanksgiving Day 1950 and December 1951 but was not finished when the plaintiff's husband barricaded it in February 1952.
Proof of the material facts necessary to enable the City to prove its acquisition of title under the subject statute was on the defendants. They have failed to prove that the City constructed the road four years prior to March 18, 1954, the date plaintiff's suit was filed, nor have they proved such an offer and acceptance of dedication or such acts of construction as might aid them under the case of Pasco County v. Johnson, Fla. 1953, 67 So.2d 639.
Because we have found that the defendants have failed to prove that the City constructed and maintained the street in question for more than four years prior to the institution of this suit, it is not necessary to determine whether the acts of plaintiff, in barricading the street in February 1952, *63 would be such an interruption as to toll the running of the statute as of that date. See 1 Am.Jur., Adverse Possession, Sec. 175, p. 889 and 17A Am.Jur. Easements, Sec. 80, p. 694.
We must therefore consider whether the defendants proved their other affirmative defense, to-wit:
"* * * that the land described in paragraph 1 of the amended bill of complaint is one of the main thoroughfares in the City of Homestead and has been used by the public continuously and uninterruptedly for a period of more than twenty years prior to the institution of this suit."
The following reproduction of a portion of the map of the City shows the location of the subject lands and adjacent lands and streets mentioned herein:

*64 The record reveals that William H. Sykes, plaintiff's father and predecessor in title, at one time owned all of the lands shown on the map as parcels 1, 2, and 3. He conveyed parcel 1 to Boyer in 1925, parcel 2 to plaintiff in 1939, and thereafter parcel 3, on which the Sykes home was located, was conveyed to a person not involved in this suit.
While the City has only paved the west 250 feet of plaintiff's land, parcel 2, it is obvious from the pleadings that it claims the right to use all of said parcel for its full depth of approximately 660 feet.
Prescription is one of the methods by which the public may acquire the right to use land as a highway. Couture v. Dade County, 1927, 93 Fla. 342, 112 So. 75; Zetrouer v. Zetrouer, 1925, 89 Fla. 253, 103 So. 625.
The establishment of a public highway by prescription, or long user, is based on the presumption of a prior grant. A prescriptive right is an incorporeal hereditament in land.
The establishment of title by adverse possession is based on the theory that the owner has abandoned the land to the adverse possessor. Title so acquired is a corporeal right, and it is the nature of the right acquired which marks the principal difference between a prescriptive right and title by adverse possession.
The trend of modern authorities is to abandon the theory that prescriptive rights are based on the presumption of a prior grant, and to treat the acquisition thereof as being rights acquired by methods substantially similar to those by which title is acquired by adverse possession. Bridle Trail Ass'n v. O'Shanick, Mo. App. 1956, 290 S.W.2d 401; Plaza v. Flak, 1951, 7 N.J. 215, 81 A.2d 137, 27 A.L.R.2d 324; 17A Am.Jur. 678, Easements, Sec. 66. We agree with these authorities.
In either prescription or adverse possession, the right is acquired only by actual, continuous, uninterrupted use by the claimant of the lands of another, for a prescribed period. In addition the use must be adverse under claim of right and must either be with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by and adverse claim of the claimant is imputed to the owner. In both rights the use or possession must be inconsistent with the owner's use and enjoyment of his lands and must not be a permissive use, for the use must be such that the owner has a right to a legal action to stop it, such as an action for trespass or ejectment.
Further in either prescription or adverse possession, the use or possession is presumed to be in subordination to the title of the true owner, and with his permission and the burden is on the claimant to prove that the use or possession is adverse. This essential element as well as all others must be proved by clear and positive proof, and cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture. Horton v. Smith-Richardson Inv. Co., 1921, 81 Fla. 255, 87 So. 905; J.C. Vereen & Sons v. Houser, 1936, 123 Fla. 641, 167 So. 45.
In Florida there is no presumption that adverse possession once shown to exist continues to do so. The claimant must, by clear, definite and accurate proof show that the possession continued for the full period required by law. Atlantic Coast Line R. Co. v. Seward, 1933, 112 Fla. 326, 150 So. 257.
Also, "* * * the limits, location, and extent of his occupation must be definitely and clearly established by affirmative proof, and cannot be established or extended by presumption * * *" Wilkins v. Pensacola City, 1895, 36 Fla. 36, 18 So. 20, 26. And the pleadings, as well as the proof, particularly where a prescriptive way is claimed, must show a reasonably certain line, by definite route and termini. Crosier v. Brown, 1909, 66 W. Va. *65 273, 66 S.E. 326, 25 L.R.A.,N.S., 174; 25 Am.Jur., Sec. 15, p. 349.
Acquisition of rights by one in the lands of another, based on possession or use, is not favored in the law and the acquisition of such rights will be restricted. Irion v. Nelson, 1952, 207 Okla. 243, 249 P.2d 107; 28 C.J.S. Easements § 10, p. 645. Any doubts as to the creation of the right must be resolved in favor of the owner.
While there are slight differences in the essentials of the two actions, they are not great. In acquiring title by adverse possession, there must of course be "possession". In acquiring a prescriptive right this element is use of the privilege, without actual possession. Further, to acquire title the possession must be exclusive, while with a prescriptive right the use may be in common with the owner, or the public.
Under the principles of law above set forth and the cases and authorities cited it was necessary for the defendants to allege and, by clear and positive proof, to prove (1) that the public had the continued and uninterrupted use or enjoyment of the plaintiff's lands for a roadway for a period of at least twenty years prior to the barricading thereof by the plaintiff's husband in February 1952, (2) the identity of the roadway, i.e. its route, termini, and width, and (3) that the use or enjoyment was adverse or under claim of right. J.C. Vereen & Sons v. Houser, supra.
Here may we say that we recognize that in the case of Zetrouer v. Zetrouer, supra [89 Fla. 253, 103 So. 626], this Court used language indicating that continuous and uninterrupted use of land alone would be sufficient to create a prescriptive right and that it might not be necessary that the use be adverse. However, it is to be noted that in the opinion the Court states that the bill of complaint in that cause alleged that the plaintiffs there had used the road in question "continuously, uninterruptedly and adversely * * *." Nevertheless, insofar as that opinion may be at variance with this and other opinions of this Court this opinion shall control.
In examining the pertinent portion of the defendants' Answer we find that it is insufficient in that it is not alleged that the use by the public was adverse, or of such character as to charge the plaintiff, or her predecessors in title, with knowledge that the use was adverse under claim of right. Since we must reverse this cause for further proceedings the defendants should be given the opportunity to amend their answer if they feel that they can offer clear and positive proof to support the allegation. They have not done so in the record before us.
It would seem also that the answer does not properly identify the route, termini, location and width of the easement claimed by the defendants, unless it is their intention to claim that the easement covered the whole length and width of plaintiff's property, which from the record it is clear it is not their contention. Yet, the effect of the decree appealed from gives the City an easement over all of plaintiff's land
While the insufficiency of the pleading in which the affirmative defense of prescription was asserted might well be sufficient to render this defense ineffective, it may be helpful in the proceedings to follow the remand of this cause, if we consider and comment on the evidence.
The evidence shows that for many years prior to the paving of a portion of plaintiff's property by the City in 1950 or 1951, a "little rock road" of the width of an automobile or wagon wheels was on plaintiff's land. This road entered plaintiff's land from S. Krome Ave., ran east for a distance and route not shown by the record, veered north and off of plaintiff's land, then ran to and past the Sykes house which was located on lands to the north of those presently owned by plaintiff.
Giving the evidence the view most favorable to defendants, there still is no showing that the public ever used the full fifty *66 foot width or depth of plaintiff's lands before the paving of the west 250 feet thereof by the City. At best the evidence shows that the public made some use of the "little rock road" as it traversed plaintiff's lands going to the Sykes house.
The evidence as to the use by the public is vague and uncertain. The extent and frequency of the use is not shown. There is nothing to show that the use was so continuous, uninterrupted, open and notorious as to impute to the owner of the lands that the public was exercising the privilege under a claim of right adverse to the owner.
There is nothing to show that the use made by the public was inconsistent with the rights of the owner to his use and enjoyment of the land, which supports rather than overcomes the presumption that any such use was permissive. The evidence shows that the road went to the Sykes home and was used primarily as a way for the convenience of the Sykes and those who came to see them.
Such evidence is not and should not be considered sufficient to support a decree establishing the servitude and encumbrance of a prescriptive right. The evidence must be clear and positive as to all the essential elements required to establish such a right.
This is so because depriving one of his rights in property without compensation is not a matter to be taken lightly, and it matters not that the right is being sought by a governmental body for the use of the public.
On the record before us we find that it was error for the chancellor to refuse the issuance of the injunction prayed for by the plaintiff, but that on the status of the pleadings it was not error to refuse to award compensation for the taking of plaintiff's lands by the City.
The decree appealed from is reversed with directions that all parties be given the opportunity to amend their pleadings as they may desire and that further proceedings be had in accordance with this opinion.
THOMAS, Acting C.J., and ROBERTS, DREW and THORNAL, JJ., concur.