DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

—————————————————

LINCOLNSHIRE MAXIMO LLC,

Appellant,

v.

MARINA WALK, LLC,

Appellee.

No. 2D2025-0037

—————————————————

March 25, 2026

Appeal from the Circuit Court for Pinellas County; W. Douglas Baird, Judge.

Stacy D. Blank, Jason H. Baruch, and Paul J. Punzone of Holland & Knight LLP, Tampa, for Appellant.

Diran V. Seropian and Daniel S. Weinger of Luks, Santaniello, Petrillo, Cohen & Peterfriend, Fort Lauderdale; and Brian A. Bolves and Laura S. Olympio of Manson Bolves Donaldson Tanner, P.A., Tampa, for Appellee.

BLACK, Judge.

Lincolnshire Maximo LLC (Maximo) appeals from the final judgment entered in favor of Marina Walk, LLC, following a nonjury trial. Because the trial court erred in finding that a prescriptive easement existed for the drainage pipe on Maximo's property and in otherwise determining that Marina Walk's use of the pipe for drainage was consistent with its

right as the upland property owner to drain surface water in a manner that comports with what the trial court deemed to be the historical drainage pattern, the final judgment is reversed in part.

Maximo and Marina Walk own properties on opposite sides of 37th Street South in St. Petersburg near Boca Ciega Bay. Marina Walk's property is on the east side of 37th Street South; Maximo's property is on the west side of 37th Street South and comprises a marina, boat basin, and canal. A drainage pipe extends westward from Marina Walk's property under both 37th Street South and Maximo's parking lot, ultimately emptying into Maximo's boat basin through a seawall. This appeal concerns Marina Walk's right to use the portion of the pipe on Maximo's property.

In the 1950s and 1960s Morty and Alvin Wolosoff acquired and developed, either individually or through their business entities, properties near Boca Ciega Bay, including the property now owned by Maximo and the property now owned by Marina Walk. A hotel was built on the property now owned by Marina Walk, and to accommodate surface water drainage from the hotel, the pipe at issue was installed. The pipe has existed in its current configuration since at least 1968. Ownership of the properties changed over the years, and then in 2009 Maximo purchased the property comprising the marina, boat basin, and canal. That same year, an entity owned by Jack Doughtery purchased the property across the street, upon which the hotel had been built; in 2019 that property was sold to Marina Walk, another entity owned by Mr. Doughtery. Operation of the hotel continued until 2018,[1] when Mr.

---

[1] The hotel first operated as a Holiday Inn. Later it operated as the Flamingo Hotel.

Dougherty decided to redevelop the property into a luxury apartment complex. That same year, Maximo objected to the use of the pipe on its property, sending Mr. Doughtery a cease-and-desist letter in which Maximo stated that the hotel property did not have permission to drain surface water through the pipe on Maximo's property or into Maximo's boat basin. When drainage through the pipe continued, Maximo plugged the pipe, though the plug was removed during the pendency of the trial court proceedings.

In 2021 Maximo filed a complaint against Marina Walk, which was later amended. Marina Walk in turn filed a counterclaim against Maximo, which was also later amended. A nonjury trial was held in August 2024, and in December 2024 the final judgment was rendered. The following counts were resolved by the trial court in the final judgment: count I of Maximo's amended complaint, which sought a declaration of the right to exclude others from using the pipe to drain surface water onto its property; count II of Maximo's amended complaint, which sought a permanent injunction preventing Marina Walk from discharging surface water through the pipe on Maximo's property; count IV of Maximo's amended complaint, which sought damages in the form of disgorgement of profits based on unjust enrichment; count I of Marina Walk's amended counterclaim, which sought damages for private nuisance due to the interference with surface water flow; count II of Marina Walk's amended counterclaim, which sought damages for trespass due to the interference with easement rights; count IV of Marina Walk's amended counterclaim, which sought a declaration of the existence of an easement by implication; count V of Marina Walk's amended counterclaim, which sought a declaration of the existence of a prescriptive easement; and count VII of Marina Walk's amended

3

counterclaim, which sought damages for nuisance due to the interference with water views, as well as an injunction.

The trial court found that no evidence had been presented demonstrating that the use of the pipe on Maximo's property had been permissive and that Marina Walk had proven each element to establish a prescriptive easement. The trial court further found that the use of the pipe was consistent with Marina Walk's right as the upland property owner to drain surface water in a manner that aligns with what had become the "historical drainage pattern." Moreover, while the trial court found Marina Walk's use of the pipe to be exclusive, it determined that Marina Walk's drainage of surface water through the pipe and into the boat basin did not "negatively impact[] the Maximo property or its operation to any degree." In addition to declaring the existence of a prescriptive easement, the trial court entered judgment in favor of Marina Walk for private nuisance and trespass. And because it found there to be a prescriptive easement for the pipe on Maximo's property, the court deemed moot Marina Walk's count for declaration of an easement by implication. Maximo's claims for declaratory relief, permanent injunction, and unjust enrichment were denied.[2]

On appeal, Maximo argues that the trial court erred in finding there to be a prescriptive easement. According to Maximo, use of the pipe on its property had always been permissive, and as such it had the right to withdraw that permission. Maximo contends that the trial court misapplied the law by ignoring the presumption of permissive use and that competent substantial evidence does not support the finding that

---

[2] Though not pertinent to this appeal, several claims were also dismissed at trial.

4

permission to use the pipe had not been granted either by Maximo or any of the prior owners of its property. Additionally, Maximo argues that the drainage rights of an upland property have no applicability here.[3]

The issues in this appeal present mixed questions of law and fact. We review questions of law de novo and findings of fact for competent substantial evidence. *See CBHIV LLC v. Walton County*, 405 So. 3d 536, 541 (Fla. 1st DCA 2025).

"[A]n easement is a right to use another's land 'for some particular purpose or purposes.' " *SHM Cape Harbour, LLC v. Realmark META, LLC*, 335 So. 3d 754, 759 (Fla. 2d DCA 2022) (alteration in original) (quoting *Buie v. Bluebird Landing Owner's Ass'n*, 172 So. 3d 519, 522 (Fla. 1st DCA 2015)). The following elements must be proven to establish the existence of a prescriptive easement:

> (1) actual, continuous, and uninterrupted use by the claimant or any predecessor in title for the prescribed period of twenty years; (2) that during the whole prescribed period the use has been either with the actual knowledge of the owner or so open, notorious and visible that knowledge of the use is imputed to the owner; (3) that the use related to a certain limited and defined area of land or, if for a right-of-way, the use was of a definite route with a reasonably certain line, width, and termini; and (4) that during the whole prescribed period the use has been adverse to the lawful owner; that is, (a) the use has been made without the permission of the owner and under some claim of right other than permission from the owner, (b) the use has been either exclusive of the owner or inconsistent with the rights of the owner of the land to its use and enjoyment, and (c) the use has been such that, during the whole prescribed period, the owner had a cause of action against the user for the use being made.

---

[3] Maximo also challenges on appeal the trial court's denial of its claim for damages in the form of disgorgement of profits based on unjust enrichment. This argument lacks merit, and we decline to comment on it further.

5

*Dana v. Eilers*, 279 So. 3d 825, 827-28 (Fla. 2d DCA 2019) (quoting *Dan v. BSJ Realty, LLC*, 953 So. 2d 640, 642 (Fla. 3d DCA 2007)); *accord Downing v. Bird,* 100 So. 2d 57, 64 (Fla. 1958); *Phelps v. Griffith*, 629 So. 2d 304, 305 (Fla. 2d DCA 1993). Maximo does not dispute the first three elements. Thus the only element at issue in this appeal is adverse use and specifically whether the use had been with permission. *See Dana,* 279 So. 3d at 829 ("In this case, as in many others, it is the element of adversity that is primarily in dispute . . . .").

It is well established that the use of the property of another is presumed to be with the owner's permission. *Dana,* 279 So. 3d at 828 (quoting *Downing,* 100 So. 2d at 64); *Dan,* 953 So. 2d at 642. And as such the "burden is on the claimant to prove that the use or possession is adverse" by "clear and positive proof." *Dana,* 279 So. 3d at 828 (quoting *Downing,* 100 So. 2d at 64). Clear and positive proof "is consistent with the jurisprudential definition of clear and convincing evidence." *Id.* "[L]oose, uncertain testimony which necessitates resort to mere conjecture" is insufficient. *Id.* (quoting *Downing,* 100 So. 2d at 64); *see also Crigger v. Fla. Power Corp.,* 436 So. 2d 937, 943 (Fla. 5th DCA 1983) ("Because under *Downing v. Bird* prescriptive rights are gained by an adverse user asserting a right based on his own wrongdoing, the law does not favor the acquisition of prescriptive rights and requires a high burden as to allegations and proof in order to overcome historical and well-founded presumptions against wrongdoing."). "[A]ll doubts as to the adverse character of a claimant's pattern of use must be resolved in favor of the lawful owner of the property." *Dana,* 279 So. 3d at 828 (quoting *Phelps*, 629 So. 2d at 306).

6

The trial court made no mention of the presumption of permissive use in the final judgment. And in fact it appears to have placed the burden on Maximo to prove that the use had been with permission:

> No evidence was produced at trial to demonstrate that Maximo or any of the previous owners of the Maximo marina property ever granted permission to Marina Walk or any of its previous owners to use the [p]ipe to drain Marina Walk storm drainage into the marina basin through the [p]ipe.

Placing such a burden on Maximo runs afoul of clearly established precedent. *See Downing*, 100 So. 2d at 64; *Dana*, 279 So. 3d at 828; *see also Suwannee River Water Mgmt. Dist. v. Price*, 740 So. 2d 46, 47 (Fla. 1st DCA 1999) ("[T]he trial court thus erred in placing the burden on the District to prove that appellee's use of the District's road was permissive."). And Marina Walk otherwise failed to meet its burden of proving that the use had been without permission.

The evidence presented at trial established that the pipe has been used—either by Marina Walk or the prior owners of the property—for drainage since the 1960s. When the pipe was first installed and used, there was commonality in ownership of the property now owned by Maximo and the property now owned by Marina Walk. No easement for use of the pipe was ever recorded. Peter Fritsch, the plans supervisor for the City of St. Petersburg, reviewed Marina Walk's site plans for the apartment complex. Several options were included in the site plans for drainage, including through the pipe on Maximo's property. According to Mr. Fritsch, it is not common for site plans to show drainage through another's private property. Mr. Doughtery testified that to his knowledge, the pipe "was installed with permission." He further agreed that he was "not aware of any permission that was not granted for the use of th[e] pipe from the beginning." And prior to receiving the cease-

7

and-desist letter, he "did not have any question [him]self as to whether th[e] hotel was allowed to drain or not drain."

Contrary to the court's finding, the evidence presented at trial did establish that permission or consent to use the pipe on Maximo's property had been given—at least implicitly—until that permission was withdrawn in 2018. *See Dana*, 279 So. 3d at 829-30 ("While none of the witnesses could recall prior owners giving express consent to use of their portion of the driveway, the evidence showed that the Danas and their predecessors allowed the Eilers and their predecessors to freely use the disputed property and that the driveway was used by both parties and their predecessors for the same common purpose. Thus, we find there is evidence of implicit consent, supporting a presumption of permissive use." (footnote omitted)).

And while the trial court found that the use has been exclusive, it also found—and Maximo does not dispute on appeal—that the use has not "negatively impacted the Maximo property or its operation to any degree." In other words, Marina Walk's use of the pipe for drainage is not inconsistent with Maximo's use and enjoyment of its property. *See Dana*, 279 So. 3d at 830 ("[T]here was no evidence that the Eilers' use of the disputed property prevented the Danas or their predecessors from making use of the property as they desired. The Eilers presented no evidence of use of the property in a manner that was against the interest of, or injurious to, the Danas or their predecessors." (citation omitted)); *Phelps*, 629 So. 2d at 306 ("In the present case, there was at least implicit evidence of consent by the present and former owners of the land underlying Lemon Patch Road. Although no one could recall when, or whether, these owners had given express permission to traverse the improved road rather than the adjacent deeded easement, there also was

8

no evidence whatsoever that appellees' use of the road prevented appellants or their predecessors from doing anything they wanted with their property. Although counsel for appellees represented that appellants were 'disallow[ed] the right to plant citrus trees' or make other use of the 15–foot strip, there was no showing appellants had ever attempted or desired to use this portion of their land for anything other than a road. Accordingly, we reverse the final judgment awarding appellees a prescriptive easement and remand this case with instructions to enter judgment for appellants."); *Guerard v. Roper*, 385 So. 2d 718, 721 (Fla. 5th DCA 1980) ("[T]here is nothing to show that the use made by the appellee was inconsistent with the rights of the owner to her use and enjoyment of the land, which supports rather than overcomes the presumption that any such use is permissive.").

As this court recognized in *Dana*, even in the face of "long-term, open, [and] continuance use by [claimants] and their predecessors, under Florida law, [claimants] must still establish adversity." *See* 279 So. 3d at 830. "The law has placed the burden on the claimant and protects the record title owner and those that may acquire the property in the future." *Id.* at 830-31. And here, adversity was not shown by clear and positive proof. *See id.* at 831.[4]

---

[4] Marina Walk's reliance on *Hunt Land Holding Co. v. Schramm*, 121 So. 2d 697 (Fla. 2d DCA 1960), is misplaced. In *Hunt*, unlike in this case, no evidence—implicit or otherwise—of permissive use was presented. *See id.* at 701; *see also Dana*, 279 So. 3d at 830 n.7 (distinguishing *Hunt* in part because the landowner in *Hunt* "offered no evidence that consent had been given, choosing to rely solely on the legal presumption of permissive use"). Moreover, this court in *Hunt* held that the claimants had "surmounted" the presumption of permissive use in part because the use was "inconsistent with the rights of the owners to their use and enjoyment of the lands." 121 So. 2d at 701. But here, the

Maximo also argues—and we agree—that the trial court further erred to the extent it concluded that Marina Walk's use of the pipe was consistent with its drainage rights as the upland property owner. It appears that the trial court was in effect relying on the "reasonable use rule" as it is applied in circumstances where there has been "interference with surface waters." *See Westland Skating Ctr., Inc. v. Gus Machado Buick, Inc.*, 542 So. 2d 959, 962 (Fla. 1989). That rule has no applicability here, however, as Maximo's property and Marina Walk's property are not adjoining. *See id.* at 962-63.

For the reasons set forth above, the final judgment is reversed to the extent the trial court denied Maximo relief on counts I and II of its amended complaint and to the extent the trial court entered judgment in favor of Marina Walk on counts I, II, and V of its amended counterclaim. The final judgment is otherwise affirmed. On remand, the trial court shall enter judgment in favor of Maximo on counts I and II of its amended complaint.

Affirmed in part, reversed in part, and remanded.


SLEET, J., Concurs.
LUCAS, C.J., Concurs with opinion.

---

trial court found that Marina Walk's use of the pipe for drainage was not inconsistent with Maximo's use and enjoyment of its property. Moreover, because the *Hunt* opinion failed to identify the evidence supporting the conclusion regarding inconsistent use, subsequent decisions from this court have recognized that it is of limited use. *See Dana*, 279 So. 3d at 830 n.7; *see also Phelps*, 629 So. 2d at 306.

10

LUCAS, Chief Judge, Concurring.

In all fairness to the circuit court, there seems to be little meaningful difference between the drainage pipe at issue in this case and the drainage ditch that was at issue in *Hunt Land Holding Co. v. Schramm*, 121 So. 2d 697 (Fla. 2d DCA 1960). Nevertheless, I fully concur with the majority because of the presumption that Marina Walk's decades-long usage of Maximo's property—running drainage water through a pipe across Maximo's property and into its boat basin—was permissive, and Marina Walk presented no evidence to overcome that presumption. *See Downing v. Bird*, 100 So. 2d 57, 64 (Fla. 1958) ("[I]n either prescription or adverse possession, the use or possession is presumed to be in subordination to the title of the true owner, and with his permission and the burden is on the claimant to prove that the use or possession is adverse."); *Dana v. Eilers*, 279 So. 3d 825, 831 (Fla. 2d DCA 2019) ("All the evidence here is consistent with, and reinforces, the existing presumption of permissive use. Under such facts, there is a lack of evidence of adversity, and the claimants have thus failed to overcome the presumption of permissive use afforded under Florida law.").

In *Hunt*, a man-made ditch had been used for more than forty-five years by neighboring property owners (both developers, as it happens) for draining stormwater and runoff into the intracoastal waterway. 121 So. 2d at 699. After the downland developer tried to dam the ditch, the upland developer sought an injunction based on an alleged prescriptive easement. The circuit court granted the injunction, and we affirmed. *Id.* at 700–01. In so ruling, we noted that the ditch had been consistently utilized "without objection by anyone concerned" and that "the use was accepted, acquiesced in, and was treated as necessary and permanent for drainage of the area through the years, up to the present time." *Id.*

11

at 699, 701.  We acknowledged that a prescriptive easement requires clear and positive proof that the servient estate did not acquiesce in the use of its property and that a presumption of permissive use must be overcome by the party claiming the easement.

But then we put a novel gloss on both that burden and that presumption.

> [T]he presumption of permissive use may be overcome by knowledge imputed to the owner of adverse use by the party claiming the prescriptive right, that it is not necessary that this be done by declarations or assertions but it may be effectuated by use inconsistent with the owner's use and enjoyment of his lands, and, further, that the use need not be exclusive but may be in common with the owner or the public.

*Id.* at 701.  That formulation effectively collapsed the fourth element of prescriptive easements ("that during the whole prescribed period the use has been made without the permission of the owner and under some claim of right other than permission from the owner") into the second element ("that during the whole prescribed period the use has been either with the actual knowledge of the owner or so open, notorious and visible that knowledge of the use is imputed to the owner").  *See Dana*, 279 So. 3d at 827 (quoting *Dan v. BSJ Realty, LLC*, 953 So. 2d 640, 642 (Fla. 3d DCA 2007)); *accord Downing*, 100 So. 2d at 64.  Indeed, if imputed knowledge of some inchoate, inconsistent use is all that's needed to overcome the presumption by clear and positive proof, we either have a phantom presumption or an illusory burden.  It's difficult—maybe impossible—to square that aspect of *Hunt* with what the law of prescriptive easements requires.

Which may explain why, in two opinions, we have quietly swept this part of *Hunt* into a corner.  *See Dana*, 279 So. 3d at 830 n.7

12

(distinguishing *Hunt* and observing that its analysis on inconsistent usage was "of limited use"); Maj. op. n.4 ("[B]ecause the *Hunt* opinion failed to identify the evidence supporting the conclusion regarding inconsistent use, subsequent decisions from this court have recognized that it is of limited use.").  I would turn up the volume on these footnotes.  Absent some compelling argument to treat water drainage differently than all other prescriptive easements,[5] we should either recede from this aspect of *Hunt* or clearly proclaim it was just a "one-off" and confined to the unique facts of the case.

—————————————————

Opinion subject to revision prior to official publication.

—————————————

[5] To date, no such argument has been suggested.

13