436 So.2d 937 (1983)
Donald CRIGGER and Elaine Crigger, Appellants,
v.
FLORIDA POWER CORPORATION, Appellee.
No. 82-1156.
District Court of Appeal of Florida, Fifth District.
June 30, 1983.
Rehearings Denied August 24, 1983.
*939 Leslie R. Gardieff, Crystal River, for appellants.
James F. Stanfield, St. Petersburg, for appellee.
COWART, Judge.
This case involves the allegations and proof essential to establish a prescriptive right to an easement and whether an express easement given by one of several co-owners of land renders user under the authority of the easement permissive rather than adverse.
Appellants, Donald and Elaine Crigger, as plaintiffs and present landowners, filed an action for inverse condemnation against the appellee, Florida Power Corporation, alleging that the power company, an entity with the power of eminent domain, had appropriated and was claiming and using a right-of-way 100 feet wide across their land as a power transmission line without permission or payment. The owners alleged that when they acquired the land in 1974, the power company had one set of poles and wires across the land and that in 1979 the power company erected a second and different power line and thereafter removed the older line.
The power company admitted use of the electrical transmission line without permission of, or payment to, the present owners but made the following two affirmative defenses:
FIRST AFFIRMATIVE DEFENSE
As its First Affirmative Defense the Defendant states that all facilities on or over the subject property and being used by Defendant for the transmission or distribution of electricity are on or over that said property under authorization of an easement filed in the Public Records of Citrus County, Florida. A copy of said Public Records is attached hereto as Exhibit "A". Said easement is further reflected in the said Public Records at Book 267 Page 354 a copy of which is attached hereto as Exhibit "B". Said easement authorizes Defendant's use of the subject property in the manner complained of by Plaintiff's.
SECOND AFFIRMATIVE DEFENSE
As its Second Affirmative Defense the Defendant states that it has acquired an easement on and over the subject property by prescription in that said easement is used and has been actually used for the transmission of electrical energy and that such actual use is well defined and specific and has been continuous and uninterrupted for a period not less than twenty (20) years and further, that such use, has been open, notorious and visible during the entire period. Said prescriptive easement is superior to any claim of Plaintiff's for inverse condemnation.
At trial by stipulation the owners introduced into evidence an abstract of 13 recorded instruments deraigning title from sovereignty into the present owners. The owners admitted the power line was on and over their property when they purchased it in 1974. They also testified without contradiction that in about 1976 representatives of the power company twice approached them and asked them to sign two documents which were put into evidence. The first document, dated October 29, 1976, was for an easement for a new Beverly Hills-Inverness 115 KV transmission line proposed to be 100 feet wide centered on the center line of the existing Ingles-Brooksville 69 KV transmission line as constructed. The second document, dated November 30, 1976, was a supplemental easement which recited that the power company had one transmission line on a 100 foot right-of-way, specifically and explicitly referring to and describing the Lilly easement set forth below, and *940 that the power company desired to be granted the right to erect an additional transmission line within the same 100 foot wide right-of-way. The owners testified they declined to execute these proposed easements although offered $400 as consideration. The owners further testified that the power company advised them in 1979 that it intended to rebuild the existing power line under the authority of easement rights previously granted and the owners objected saying that they did not recognize that the power company had any easement or authority.
In support of its first affirmative defense the power company introduced into evidence the following recorded document which is herein called the Lilly easement:
EASEMENT AND RIGHT-OF-WAY
KNOW ALL MEN BY THESE PRESENTS, That the undersigned in consideration of the sum of One Dollar and other valuable considerations, the receipt of which is hereby acknowledged, grant and convey to FLORIDA POWER CORPORATION, its successors and assignees, the right, privilege and easement to construct, operate and maintain for such period of time as it may use the same or until the use thereof is abandoned, a single pole, line for the transmission and distribution of electricity, including necessary communication and other wires, poles, guys, anchors, ground connections, attachments, fixtures, equipment and accessories desirable in connection therewith over, upon and across the following described land in Citrus County, State of Florida, to-wit:
NE 1/4 of SE 1/4, Section 27, Township 18S, Range 19E SW 1/4 of SW 1/4, Section 12, Township 19S, Range 19E less five (5) acres in northwest corner provided that clearing of trees is limited to fifty (50) feet on each side of power line and danger timber.
together with the right to patrol, inspect, alter, improve, repair, rebuild or remove such lines, equipment and accessories, including the right to increase or decrease the number of wires and voltage, together will all rights and privileges reasonably necessary or convenient for the enjoyment or use thereof for the purposes above described, including the right to trim, cut and keep clear such trees, limbs and undergrowth along said lines, and all trees adjacent thereto that may endanger the proper operation of the same, and including the reasonable right to enter upon adjoining lands of the grantors for the purpose of exercising the rights herein granted.
The grantors covenant that they have the right to convey the said easement and that the grantee, its successors and assignees shall have quiet and peaceable possession, use and enjoyment of said easement.
IN WITNESS WHEREOF, the grantors have hereunto affixed their hands and seals this 2nd day of January, A.D., 1951.
Signed, sealed and delivered in presence of:

 Mrs. Eloise L. Tillman Mrs. Paul R. Lilly (LS)
 J.H. Tillman Paul R. Lilly (LS)

The defendant power company also presented the testimony of five witnesses, all employed by the power company, none of whom had or claimed any personal knowledge about the acquisition of the Lilly easement or about the facts or circumstances under which the power company originally entered into the use of the land in question. The witness Hitson testified that the power line had been on the property in question from about 1970. The witness Anderson had only recently photographed the property. The witness Worley personally knew the line had been used the last seven years and was familiar with the power company's records including two documents introduced into evidence. One of the documents was a construction survey and plan dated May 16, 1951, for the Inglis-Brooksville 69 KV line (which shows pole IB-133 about 19 feet south of a fence). The second document was an aerial photograph-based construction survey dated March 28, 1979 for the Holder-Brooksville 69 KV line, *941 which shows pole IB-133 to be removed and pole HB-95 to be located near the center of plaintiff's property. The witness Roth was a technician who explained the meaning of the lines and symbols on the construction surveys and plans and the company's construction methods. The witness Harris was another company technician who explained the difference between the insulators on the pre-1979 line and those on the 1979 line. The witness Worley, who was in the power company's real property permitting department and had formerly been one of its land agents, corroborated the plaintiffs' testimony that the power company approached the plaintiffs in 1976 seeking an easement and supplemental easement and he testified, as alleged in the First Affirmative Defense, that the Lilly easement was the authority under which the power company was acting and using the power line in question.
The trial court entered judgment for the power company and against the landowners on the basis that the power company had perfected a prescriptive easement for an electrical transmission line 100 feet in width centered on the existing line and that the 1979 rebuilding of the line imposed no additional burden on the property. The owners appeal.
Viewing the evidence presented and all inferences that can possibly be drawn from the evidence in a light most favorable to the power company it can be conceded that the power company proved the well-pleaded factual allegations[1] in both of its affirmative defenses, to-wit: (1) All use by the power company of electrical transmission facilities on or over the plaintiff's land was under the authority of the Lilly easement, and (2) the power company's actual use of its electrical transmission facilities had been open, notorious, visible, continuous and uninterrupted for not less than 20 years.[2] However, this concession does not dictate a proper conclusion in this case.
In Florida an easement is an incorporeal hereditament[3] and, as such, is an interest in land.[4] An easement is not title to, ownership of, or a lien upon, land but is an intangible right to make a certain use of the lands of another. Easements may be created by express grant; by implication; or by prescription.
The strength of the common law resulted from its comprehension of human nature and accommodation of the practical limitations of the times, but its wisdom resulted from the assumption that persons had done, were doing, or would do, that which was morally right, and from an objective to benefit rightful acts and to not permit one to benefit from his own wrongful act. Because ownership of land implies the right to its exclusive possession, use and control, one in actual possession is always presumed to be the owner.[5] When one other than the owner is in actual possession or makes some actual use then the law presumes that such actual possession or use is with permission granted by the true owner. When one without title had openly enjoyed the quiet and uninterrupted possession and use for so *942 long that no man then alive[6] had heard any proof that such possession was wrongful the common law supposed the user to have had a just right without which, it was assumed, he would not have been suffered to have continued so long to enjoy the use. This presumption was the basis for a plea of custom and for a presumption or fiction that such permissive use was made under an ancient grant, made but lost. This fiction of a "lost" or "prior" grant became one part of the two-part theoretical basis for a mode of acquiring title to incorporeal hereditaments by immemorial or long continued enjoyment known as prescription. Under the "lost grant" theory when the prescriptive period elapsed the presumption of a lost grant became irrebuttable. However, common law prescriptive rights were to some extent also based on statutes of limitations and this ambiguity and duplicity in the common law development of the theoretical basis for the doctrine of prescription for centuries caused misunderstanding and confusion in the courts as to the correct theory upon which prescription was based and also upon the legal requisites and consequences of prescription.[7] This centuries-old confusion is illustrated by the different views of this very case.
As statutes in the United States required interests in land to be created and transferred by instruments in writing,[8] and recording statutes[9] provided more reliable and appropriate means of proof of land transactions, to eliminate this confusion, the fiction of a "lost" or "prior" grant has been slowly but generally repudiated and abandoned as the theoretical basis for the doctrine of prescription and replaced by one clear theory based solely on an analogy to adverse possession and the effect of statutes of limitations. This clarification of the correct legal justification for prescriptive rights occurred in Florida when J. O'Connell in the leading case of Downing v. Bird, 100 So.2d 57 (Fla. 1958) stated:
The trend of modern authorities is to abandon the theory that prescriptive rights are based on the presumption of a prior grant, and to treat the acquisition thereof as being rights acquired by methods substantially similar to those by which title is acquired by adverse possession. [citing authorities] We agree with these authorities.
The consequences of this holding as to the correct theoretical basis for the doctrine of prescription are greater than may at first appear.[10] All use of land by a non-owner is presumed to be with the permission of the owner. Under both the theory of a "lost grant" and the theory based on an analogy to adverse possession, proof of a long, continuous, open use of land by one other than the owner confirmed, reinforced and strengthened the presumption that such use was with the permission of the owner. However, the effect of this basic strong presumption is diametrically opposite under the two different theories. Under the theory of a lost grant the presumption of permission coupled with proof of long, known or open, uninterrupted, actual use alone gave rise to the further presumption of a lost grant and alone established the user's prescriptive right to continue such use. As the "lost grant" theory was based on the assumption that the user was acting rightfully and at all times with the *943 permission and acquiescence of the true owner the presumption and its consequences were favored in law and resulted in the burden being on the owner to overcome the basic presumption of permissive use by proof that the use was not permissive but wrongful. Accordingly the wrongful user benefited from the presumption of the rightful permission and also from a further presumption that the presumed rightful permissive use was presumed to continue until proven otherwise. On the other hand and to the contrary, when prescriptive rights are acquired similar to the way title is acquired by adverse possession, as Downing v. Bird holds, the user must establish that continuously for the entire prescribed period the use was so adverse, hostile and wrongful as to the owner that the owner had, but failed to assert during the prescribed period, a cause of action against the user to terminate the wrongful use.[11] Because actual use is presumed to be rightful, i.e., permissive and in subordination to the title of the true owner, and, hence, not wrongful (i.e., not adverse or hostile to the owner) the burden of proof[12] is now on the user to establish that, continuously for the entire prescribed period, his use was not with the permission of the owner but was against the owner's wishes because the owner has no cause of action based on the use so long as it is being made with the owner's permission. Downing v. Bird constituted an improvement in the development of the common law in the State of Florida because under that decision the presumption of a rightful, permissive use supports and benefits the rightful owner and not the wrongful user. This view encourages a neighborly consent and indulgence by owners to the use of their land by others by preventing such permissive use from ripening into a right in favor of the wrongful users as against the title of the friendly, congenial landowner.[13] Because under Downing v. Bird prescriptive rights are gained by an adverse user asserting a right based on his own wrongdoing, the law does not favor the acquisition of prescriptive rights and requires a high burden as to allegations and proof in order to overcome historical and well-founded presumptions against wrongdoing. These concepts are mentioned in the following further quotes selected from Downing v. Bird:
Acquisition of rights by one in the lands of another, based on possession or use, is not favored in the law and the acquisition of such rights will be restricted. [citing authorities] Any doubts as to the creation of the right must be resolved in favor of the owner. Id. at 65
In either prescription or adverse possession, the right is acquired only by actual, continuous, uninterrupted use by the claimant of the lands of another, for a prescribed period. In addition the use must be adverse under claim of right and must either be with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by, and adverse claim of, the claimant is imputed to the owner. In both rights the use or possession must be inconsistent with the owner's use and enjoyment of his lands and must not be a permissive use, for the use must be such that the owner has a right to a legal action to stop it, such as an action for trespass or ejectment. (emphasis supplied) Id. at 64.
Further in either prescription or adverse possession, the use or possession is presumed to be in subordination to the title of the true owner, and with his permission and the burden is on the *944 claimant to prove that the use or possession is adverse. This essential element as well as all others must be proved by clear and positive proof, and cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture. [case citations omitted] Id. at 64.
In Florida there is no presumption that adverse possession once shown to exist continues to do so. The claimant must, by clear, definite and accurate proof show that the possession continued for the full period required by law. [case citation omitted] Id. at 64.
Also, "* * * the limits, location, and extent of his occupation must be definitely and clearly established by affirmative proof, and cannot be established or extended by presumption * * *" [case citation omitted] And the pleadings, as well as the proof, particularly where a prescriptive way is claimed, must show a reasonably certain line, by definite route and termini. [authorities omitted] Id. at 64.
According to Downing v. Bird in order to establish the elements necessary to acquire a prescriptive right the user must allege, and by clear, definite, accurate, and positive proof, prove (1) that the user has made a certain particular and actual use of lands owned by another, (2) that such use has been continuous and uninterrupted for the full prescriptive period of 20 years,[14] (3) that during the whole prescribed period such use has been either with the actual knowledge of the owner or so open, notorious and visible that knowledge of the use is imputed to the owner, (4) that such use related to a certain limited and defined area of land or, if for a right-of-way, the use was of a definite route with a reasonably certain line, width and termini,[15] (5) that during the whole prescribed period such use has been adverse to the owner; that is, (a) the use has been made without the permission of the owner and under some claim of right other than permission from the owner,[16] (b) the use has been either exclusive of the *945 owner or inconsistent with the rights of the owner of the land to its use and enjoyment[17] and (c) the use has been such that, during the whole prescribed period, the owner had a cause of action against the user for the use being made.
This case was presented and tried in the style of a "confession and avoidance," as the power company confessed, as the owners claimed, that the power company was an entity with the right of eminent domain and was using the owner's lands for a public purpose without the present owner's permission or consent. The power company sought to avoid the necessity of paying the owners for such use by affirmatively alleging and proving that it had acquired the right to use the owner's land in two ways: by express grant from the Lillys and by prescription. Most of the time and argument at trial related to efforts of the power company to establish that because its power lines were on and over the land and because the Lilly easement was recorded, the owners knew, when they acquired their land in 1974, that the power company was claiming and using a power line right-of-way over the property. These matters were really not in issue. The problem with the power company's case is that, as a matter of law, neither of the two affirmative defenses as alleged stated a cause of action necessary to establish an easement that was legally effective against the whole interest in the land title nor did the power company's proof establish a valid easement by express grant or by prescription nor did it otherwise constitute an avoidance or affirmative defense to the owner's cause of action. The two defenses that were attempted to be asserted by the power company, when properly pled, are in theory mutually repugnant *946 and inconsistent and the power company's attempt to prove its insufficient allegations resulted in conclusive disproof of both.

THE PLEADINGS

THE EXPRESS GRANT:
Rights, titles and interests in land are all intangible concepts and are created and transferred by instruments in writing or court proceedings. No written instrument can create or convey any more right, title or interest in land than the grantor therein has to grant. Therefore where one undertakes to plead and prove a right, title or interest in land, for good reason, practice and procedure has always required not a mere allegation and proof of the one title instrument given the claimant but a deraignment of the chain of title[18] into the claimant and proof thereof. The power company in its first affirmative defense attempted to allege that it had the right to make use of the owners' lands by virtue of an express grant, being the Lilly easement, but failed to allege that the Lillys were the owners of the land at the time they executed the easement or to deraign the Lillys' title; therefore, this defense, as alleged, is insufficient on its face. As will become more apparent below this was not mere technical or pleading insufficiency.

PRESCRIPTION:
The power company's second affirmative defense failed to allege a cause of action establishing a prescriptive right in that it utterly fails to allege any ultimate facts showing that during the prescriptive period the power company's use was adverse to the owner and made without permission from the owner and was made under some claim of right other than permission of the owner and was either exclusive of the owner or inconsistent with the owner's use and enjoyment of his lands. In short, the pleading does not allege adversity, the fifth element set forth above, as necessary to establish the acquisition of a prescriptive right.

THE EVIDENCE

EXPRESS GRANT:
The stipulated abstract of 13 recorded instruments deraigning the owners' title disclosed not only the present owners' title to the land but also that on January 2, 1951, the date of the Lilly easement, legal title to this land was held by three sisters in unequal undivided interest as follows: Esther Hennley, a seven/sixteenth interest, Meriam Clark Kemp Borders, a seven/sixteenth interest and Mary Clark Lilly, a one/eighth interest. Assuming, as the power company does, that Mary Clark Lilly was Mrs. Paul R. Lilly on January 2, 1951,[19] the Lilly easement was executed only by the owner of a one/eighth interest in the land. This is why at trial the power company's counsel conceded that the Lilly easement was "inadequate" to support the power company's assertion that it had a valid easement by reason of an express grant from the owner of the land and why the trial judge did not hold in favor of the power company on its first affirmative defense.

PRESCRIPTION:
We start in Florida today with the ancient presumption, developed at common law, that when one uses the land of another it is presumed that the use is with the permission of the owner. However, under the theory of prescriptive rights acquired by analogy to adverse possession and under Downing v. Bird, proof of actual, open, notorious, visible, continuous and uninterrupted use by a non-owner for 20 years does not give rise to the legal fiction of a lost grant establishing a prescriptive right but merely reinforces and strengthens the existing presumption of a permissive use[20] *947 which is the antithesis of the adverse use now necessary to establish a prescriptive use. The second affirmative defense alleged only elements one through three of the five elements of prescription by adverse use listed above. The power company endeavored only to prove the allegations in its two affirmative defenses as alleged. Thus, in this case, as in Downing[21], City of Daytona Beach,[22]Deseret Ranches[23] and Guerard,[24] the pleadings and proof were insufficient to establish adversity. The power company notes Gay Brothers Construction Co. v. Florida Power & Light Co., 427 So.2d 318 (Fla. 5th DCA 1983), but that case is not applicable to the main point in this case because in Gay the power company in asserting an easement by prescription alleged not only that its use had been open, notorious and visible but also adverse and the power company's evidence of the alleged adverse use was uncontradicted thereby warranting a summary judgment in favor of the power company. In Gay, unlike here, the easement was executed by the owner of the whole interest in the servient estate and effectively granted a right-of-way for a power line in a definite location; therefore in Gay the express easement constituted no permission for the power lines that were erected and used outside of the prescribed and permitted location. Unlike this case Gay involved the special problem of the adverse user's intent which is often controlling in the case of a mistaken boundary.[25]
All evidence offered at trial was consistent with, and reinforced, the existing presumption of a permissive use and showed no use that was adverse and inconsistent with the owners' ownership and no use made under some claim of right other than permission of the owners. The power company offered the Lilly easement as proof of a valid effectual express grant of an easement as ineffectively alleged in the First Affirmative Defense. Although the easement failed to serve this purpose it was very relevant and material to the claim of a prescriptive right attempted to be alleged in the Second Affirmative Defense. If the easement had been executed by a stranger to the legal title or had been otherwise utterly void actual use under it could be adverse as to the true owner of the land. However, Mrs. Lilly was no stranger to the title but was a joint owner with others of the land and her grant was not void. As one joint owner or cotenant Mrs. Lilly had the right to use the land. She also had the legal right to grant any and all of her rights to others. While, as a cotenant, she did not have the right to exclusive use of the land as against her cotenants she had the right to use it in common with her cotenants. A cotenant's right to make a non-exclusive use of land happens, in law, to be the very nature of the right of the owner of an easement. Thus Mrs. Lilly had the right to grant the power company permission to make a non-exclusive use of the land.[26] Her grant was not void but valid and effective as to the undivided one/eighth interest that she owned and, *948 while it was not binding on the owners of the other undivided seven/eighths title interest, because Mrs. Lilly had the right to a non-exclusive use of the whole her grant also constituted a license and permission to the power company, to use the other seven/eighths ownership interest in the land.[27] In such instances the permissive user stands in the shoes of its grantor. There is a fiduciary relationship between cotenants and in law the possession of one is the possession of all and ordinarily the possession of one cotenant is not adverse to other cotenants.[28] An exception exists under the statute providing for adverse possession under color of title when a grantee from one cotenant holds exclusive possession.[29] Of course, easements relate to non-exclusive use and the statute relating to adverse possession under color of title does not apply to adverse user. The non-exclusive use of land by one cotenant is consistent with and is not adverse to the ownership rights of the other cotenants. Likewise the non-exclusive use of land by a non-owner, such as the power company, claiming under permission and consent given by one cotenant is consistent with, and not adverse to, the ownership rights of the other cotenants. A cotenant does not have a cause of action against another cotenant, or against one using the land under permission given by a cotenant, for a non-exclusive use of the land.[30] Thus no statute of limitations runs against such non-exclusive use whether made by a cotenant or a cotenant's licensee and no prescriptive period can commence. In such a case the remedy of an unhappy cotenant is a partition action to terminate the joint ownership and thereby terminate the right to joint use of the property by other cotenants and their licensees.[31] Because the power company asserted and proved without contradiction that its use was exclusively under the authority of the Lilly easement, an instrument executed by one prior owner in the present landowners' chain of title,[32] the power company's proof conclusively established that its use was permissive and in subordination to, rather than adverse and against, the title and rights of the present landowners.
The power company's witness Hitson was incidentally a purchaser under contract and, therefore, an equitable owner of the land involved in this case from 1970 until 1974. His testimony that the land was unimproved woods until, during that time, he *949 had it cleared and fenced, was prejudicial to the power company because open, uninclosed and unimproved land not being actively used by its owner constitutes an especially difficult case in which to prove that a claimant's use is inconsistent with the owner's use.[33] Under such circumstances the claimant's use is particularly regarded as permissive rather than adverse.[34]
To prove that the present owners knew of the Lilly easement the power company established that the deeds in the chain of title to the present owners expressly stated that the conveyances were subject to "easements of record" or referred expressly to the Lilly easement. These references did not cure the basic infirmity in the Lilly easement and, further, evidenced that the landowners recognized that the use of the power company was being made with express permission from, rather than adversely to, the land titleholders.
Of course the uncontradicted and corroborated evidence that the power company twice sought an easement or supplemental user rights from the present owners was additional proof that the power company, while claiming the right to continue its use, claimed that right permissively under the Lilly easement. Thus the power company's claim was a claim of right through permission from a party in the present owners' chain of title and hence was not adverse or hostile to, but was in recognition of, the superior rights of the present title owners who hold under the same chain of title. Adverse use imports denial of the owner's title and an offer to purchase title or permission to use land from the true owner is evidence of an acknowledgement of the owner's rights and of lack of adversity.[35] Possession, however open and long it may be, is not adverse without such a denial of the rightful owner's title. Hollywood v. Zinkil, 403 So.2d 528 (Fla. 4th DCA 1981). For these reasons we hold that both of the power company's affirmative defenses fail to constitute adequate defenses to the owners' action for inverse condemnation and further, the evidence affirmatively established as a matter of law that the power company's use was permissive and did not, and could not, ripen into a prescriptive right and that the Lilly express grant of an easement to maintain a one-pole electrical transmission line was valid but effectual as a perpetual but limited easement only as to a one/eighth interest in the land and as to the electrical line originally built under its authority and permission. The power company's present problem results directly from its own negligence in not determining the correct ownership of the land in 1951 and in erecting its electrical transmission line without first obtaining an easement from all owners of the land. The power company has used this land for many years with permission only from a one/eighth ownership interest. As of 1979 the present owners terminated the power company's license and permissive user as to the other seven/eighths interest in the land. It is now time for the power company to pay for its continued use of the other seven/eighths interest and, as to the one-eighth interest, for any rights to a use greater in scope and extent than that received under the Lilly easement. Therefore the judgment for the power company is reversed and the cause is remanded with directions to enter a judgment adjudicating that the owners have a cause of action against the power company for inverse condemnation and for a jury to determine an appropriate award in the amount of full and just compensation to the present owners as of the date of the taking as to rights needed for public use and not granted by the Lilly easement.[36]
REVERSED AND REMANDED.
*950 SHARP, J., concurs.
COBB, J., dissents with opinion.
COBB, Judge, dissenting.
The real issue presented in this case is whether the element of adversity was established. This court has recently addressed this problem of "adversity." In Gay Brothers Const. Co. v. Florida Power & Light Co., 427 So.2d 318 (Fla. 5th DCA 1983), the trial court entered a summary judgment for the defendant, Florida Power & Light, allowing for an easement by prescription. We rejected the appellant's contention that adversity was missing because the lines were placed outside of the recorded easement by mistake. We held that where lands are occupied under the mistaken belief that the occupier has title, so that the occupation is under a claim of right, the holding is adverse. Liddon v. Hodnett, 22 Fla. 442 (1886).
In Goodno v. South Florida Farms Co., 95 Fla. 90, 116 So. 23 (1928), it was stated:
And, where the claimant takes possession of land by mistake and holds the same adversely claiming title to the land for a period of seven years, the law is not concerned with the question as to what might have been his intention if he had known he had no title to the land before his possession ripened into title, but the question involved is what was his intention during the period of his holding. The true question is whether, when he acquired possession, he believed it to be his own and intended to and did hold it as his own and against all persons. The intention is the test, and not the mistake. (Emphasis in original.)
116 So. at 25-26. See also Downing v. Bird, 100 So.2d 57 (Fla. 1958); Guerard v. Roper, 385 So.2d 718 (Fla. 5th DCA), review denied, 392 So.2d 1378 (Fla. 1980). It is not required that the occupier have the subjective intent to appropriate property of another in order for his possession to be adverse. See Seaboard Airline Railroad Co. v. *951 California Chemical Co., 210 So.2d 757 (Fla. 4th DCA 1968).
In Gay Brothers, the power company held land outside of a valid easement by mistake. This is analogous to what occurred in the instant case, where the power company intended to hold, and did hold, the land where an easement was granted, but the easement itself was invalid. In either case, the company was holding by mistake under a claim of right.
The majority's argument that the occupation by FPC was "permissive" because the sister who executed the defective easement permitted the occupation is specious. Such permission as would defeat the element of adversity must emanate from a putative owner  not from the express relinquishment for consideration of an owner's interest, as was the grant by Mrs. Lilly in this case. Such "permission" has no more legal significance than would permission from a complete stranger having no interest in the land whatsoever.
I would affirm.
NOTES
[1] Well-pleaded facts are ultimate facts, see Fla. R.Civ.P. 1.110(b), not conclusions of fact or law.
[2] In deference to the fact finder and in view of our conclusion we accept the finding of 20 years of uninterrupted use. However, this fact was "established by loose, uncertain testimony which necessitates resort to mere conjecture," as was held to be inadequate in Downing v. Bird. Because the power company presented no witness that had personal knowledge that the power line had existed before 1970 (which was ten years before this action was filed in 1980) proof of use from 1960 to 1970 rests solely on an inference that the power line in existence in 1970 had been erected pursuant to the construction survey and plan dated May 16, 1951, and before 1960. As proof of a fact by implication from the existence of other established facts by the use of reason and deductive logic, this meek and anemic little inference is but a big, bold and bodacious assertion or assumption by the power company.
[3] See Downing v. Bird, 100 So.2d 57 (Fla. 1958).
[4] See Winthrop v. Wadsworth, 42 So.2d 541 (Fla. 1949).
[5] See 1 G. Thompson, Commentaries on The Modern Law of Real Property § 24 (1980 replacement by J. Grimes).
[6] Proof of this "immemorial antiquity" was based on an allegation that the land "hath been used for a time whereof mind of man runneth not to the contrary." Littleton, L.2, c. 10, § 170.
[7] See 2 G. Thompson, Commentaries on The Modern Law of Real Property §§ 335 (text accompanying note 34), 337 (1980 replacement by J. Grimes).
[8] See e.g., § 689.01, Fla. Stat. (1981).
[9] See e.g., § 695.01, Fla. Stat. (1981).
[10] Downing v. Bird does not hold that the period of time that permissive use must continue in order to create a presumption of a lost grant and a prescriptive right is established by analogy to adverse possession (it is not), but that the whole theoretical basis for the acquisition of a prescriptive right is, as in adverse possession, a use adverse to the owner's rights that continues uninterrupted by the owner, physically or by legal action, for the entire period of limitation within which the applicable legal action can be brought.
[11] "If we are to follow the fiction of a lost grant, then the user must be with the approval of the owner of the fee. But if prescription is analogous to adverse possession, the use must be against the fee holder's wishes." 2 G. Thompson, Commentaries on The Modern Law of Real Property § 341, at 201 & n. 2 (citing Downing v. Bird) (1980 replacement by J. Grimes).
[12] See, e.g., Orange Blossom Hills, Inc. v. Kearsley, 299 So.2d 75, 76 (Fla. 1st DCA 1974) (citing Downing v. Bird); Cooper v. Davis, 156 So.2d 169, 170 (Fla. 2d DCA 1963) (citing Downing v. Bird).
[13] See cases collected in 3 Powell on Real Property ¶ 413, at 108-09 nn. 11-12 (rev. ed. 1981).
[14] At common law and in this state 20 years is required to create a prescriptive easement. St. Joe Paper Co. v. St. Johns County, 383 So.2d 915 (Fla. 5th DCA 1980), cert. denied 388 So.2d 1118 (Fla. 1980). Why is the period of adverse possession necessary to acquire title to land (which includes the right to make any and all lawful use of the land) 7 years but 20 years of a particular adverse use is required to acquire a prescriptive right? As of July 4, 1776, the effective date of the adoption of the general common and statute laws of England as the law of the State of Florida (see § 2.01, Fla. Stat. (1981)) the statute of James 1, 21 Jac. I, Ch. 16 (1623), fixed at 20 years the period for recovery of the possession of land. While in England this statute was not considered applicable to easements, in Florida the period of the statute of James I was extended to the acquisition of easements by prescription because easements appurtenant are considered an inheritable interest in land and, hence, an estate and within the statute of James I. In Florida the legislature, by acts now embodied in sections 95.14 and 95.16, Florida Statutes (1981), reduced the period of limitations as to adverse possession to 7 years but left at 20 years the period for adverse user and the acquisition of easements by prescription. Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla. 2d DCA 1960), cert. denied, 138 So.2d 341 (Fla. 1961).
[15] Downing v. Bird. See also Deseret Ranches of Florida, Inc. v. Bowman, 340 So.2d 1232 (Fla. 4th DCA 1976) where it is stated, "Appellant argues that because there is no mention of the width of the easement in the complaint, the complaint fails to state a cause of action. We agree that the easement is not sufficiently identified and that the complaint in its present form fails to state a cause of action... We hold that it is necessary for those claiming a prescriptive easement to allege and prove its route, termini and width." Id. at 1233.
[16] "Adverse use" is a complex concept. The person as to whom a use can be said to be adverse is the person whose rights are invaded by the use. An easement subtracts from the preexisting rights of the rightful owner of the servient estate. To be adverse as against any person, the user must not be made in subordination to the rights of such person. If, therefore, the use is made with the permission of such person, it is not adverse to that person. See the cases collected in 3 Powell on Real Property ¶ 413, at 107 n. 9 (rev. ed. 1981). See also 2 C.J.S. Adverse Possession § 77 at 752. This is why a necessary aspect of adverse use is that the use must have been made under a claim of right with some source other than permission of the then owner of the servient estate or such owner's predecessor in title. Adversity of use does not require an evil intent or ill-will or hostility in the sense of belligerency nor must the user intend to violate another's rights but adverse use must be made with an intentional disregard of the rights of the servient owner and under a claim of right as against, rather than under permission from, the present or previous owners of the servient estate. No easement by prescription can be acquired where the privilege is used by the express or implied permission or license of the owner of the land. See 2 G. Thompson, Commentaries on The Modern Law of Real Property, §§ 341, 345 (1980 replacement by J. Grimes). That use with permission of the owner prevents acquisition of a prescriptive right has long been Florida law. See Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926), where it is stated: "One who secures from the owner of property authority or permission to use a passageway over such property, cannot successfully claim such to be a way or easement by prescription." This is merely analogous to adverse possession where permissive possession of land is not adverse.
[17] As noted in Downing v. Bird, one of the few differences between adverse possession and prescriptive use is that adverse possession requires that the adverse possessor's possession of the land be exclusive of the owner while the adverse user's use need not be so exclusive and may be in common with use made of the land by others including the owner. Joint or common possession by a claimant and the owner or his tenant is not exclusive possession by the claimant and not adverse to the owner. An adverse possessor's exclusive use excluding the owner from the land is necessarily always inconsistent with the owner's right to use his land. Therefore, the element of exclusive possession serves well to give notice to the owner that the possessor's possession is adverse to the owner's ownership rights. On the other hand, a use by a non-owner that does not necessarily exclude the owner and that may be in common with the owner's use does not signify or signal that the user is making a claim that is adverse to the owner's title. This is why to ripen into a prescriptive right, the adverse use must be either exclusive of the owner or inconsistent with the owner's use and enjoyment of his land. The prescriptive requirement for a use inconsistent with that of the owner equates with the requirement in adverse possession of a possession that excludes the owner and is similar to the complete ouster or actual disseisen and repudiation of the title of one cotenant by another that is necessary for one cotenant's possession to become adverse to another cotenant. See 86 C.J.S. Tenancy in Common § 38; 48A C.J.S. Joint Tenancy § 29. In City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974), and in Deseret Ranches of Florida, Inc. v. Bowman, 389 So.2d 1072 (Fla. 5th DCA 1980), cert. denied 397 So.2d 777 (Fla. 1981), J.C. Vereen & Sons v. Houser, 123 Fla. 641, 167 So. 45 (Fla. 1936), is cited as authority for the proposition that:

If the use is not exclusive and is not inconsistent with the rights of the owner of the land to its use and enjoyment, the presumption is that such use is permissive, rather than adverse.
See also Kitzinger v. Gulf Power Co., 432 So.2d 188 (Fla. 1st DCA 1983); Hollywood, Inc. v. Zinkil, 403 So.2d 528 (Fla. 4th DCA 1981); Guerard v. Roper, 385 So.2d 718 (Fla. 5th DCA 1980), cert. denied 392 So.2d 1378 (Fla. 1980); Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla. 2d DCA 1960), cert. denied, 138 So.2d 341 (Fla. 1961).
[18] See § 65.061(3), Fla. Stat. (1981) (as to quiet title actions) and § 66.021(4), Fla. Stat. (1981), and Florida Rule of Civil Procedure, Complaint, Form 1.940 (as to ejectment).
[19] Mary Clark Lilly was the wife of Paul R. Lilly on August 10, 1957, when the three sisters owning the whole title conveyed into the chain of title which descends to the present owners.
[20] In Downing v. Bird it was said "There is nothing to show that the use made by the public was inconsistent with the rights of the owner to his use and enjoyment of the land, which supports rather than overcomes the presumption that any such use was permissive." 100 So.2d at 66.
[21] Downing v. Bird, 100 So.2d 57 (Fla. 1958).
[22] City of Daytona Beach v. Tona-Rama, Inc., 294 So.2d 73 (Fla. 1974).
[23] Deseret Ranches of Florida, Inc. v. Bowman, 389 So.2d 1072 (Fla. 5th DCA 1980), cert. denied 397 So.2d 777 (Fla. 1981).
[24] In Guerard v. Roper, 385 So.2d 718, 720 (Fla. 5th DCA 1980), cert. denied 392 So.2d 1378 (Fla. 1980), this court reversed a finding of a prescriptive easement, stating:

What is missing from the proofs in this case is the element of adversity. There is nothing in the evidence to show appellee's use of the roadway was inconsistent with the appellant's use thereof, at least until early 1978 when appellant complained.
[25] See Day, The Validity of Erroneously Located Boundaries by Adverse Possession and Related Doctrines, 10 U. of Fla.L.Rev. 245 (1957). See also 2 C.J.S. Adverse Possession § 80.
[26] See, e.g., Verdier v. Verdier, 313 P.2d 123, 152 Cal. App.2d 348 (1957).
[27] A license is a mere permission or a personal and revocable privilege to make some use of the land of another without the licensee possessing any interest or estate in the land. An easement creates an incorporeal interest in the servient estate and must be created by a writing. See 2 G. Thompson, Commentaries on The Modern Law of Real Property § 316 (text accompanying notes 22-34) (1980 replacement by J. Grimes). When an infirmity prevents an instrument from granting a valid easement, but does not render the attempt void, a license results. See 3 Powell on Real Property ¶ 429 (1981) (rev. ed. 1981). The lack of ownership by Lilly of a 7/8ths undivided interest in the land causes her grant of an easement as to that undivided interest to fizzle into the mere creation of a license. However, user as to that 7/8th interest under a license from a joint owner who had the right to make a nonexclusive use of such undivided interest, is also permissive and not adverse to the owners of that undivided interest. See Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926).
[28] See Cook v. Rochford, 60 So.2d 531 (Fla. 1952), 32 A.L.R.2d 1210; 5 G. Thompson, Commentaries on The Modern Law of Real Property §§ 2555 n. 38, 2556 n. 51 (1979 replacement by J. Grimes); 86 C.J.S. Tenancy in Common § 26.
[29] See Morrison v. Byrd, 72 So.2d 657 (Fla. 1954).
[30] See, e.g., Williams v. Bruton, 113 S.E. 319, 121 S.C. 30 (1922); Verdier v. Verdier, 313 P.2d 123, 152 C.A.2d 348 (1957), cited in 86 C.J.S. Tenancy in Common § 115, at 523.
[31] In such a partition action, the more interesting problem is the rights in the partition action of one, such as the power company in this case, who claims under a grant executed by one of several cotenants. See Annotation: Grant of part of cotenancy land, taken from less than all cotenants, as subject of protection through partition. 77 A.L.R.2d 1376 (1961).
[32] Even under the now abandoned "lost grant" theory if, as here, the origin of the claimed easement was known, a lost grant was not presumed. See 2 G. Thompson, Commentaries on The Modern Law of Real Property § 337 (text accompanying note 43) (1980 replacement by J. Grimes).
[33] See 3 Powell on Real Property ¶ 413, at 117 & n. 23 (rev. ed. 1981).
[34] See Annotation: Acquisition by user or prescriptive of right of way over uninclosed land. 46 A.L.R.2d 1140 (1956).
[35] Kittrell v. Scarborough, 287 Ala. 155, 249 So.2d 814 (1971); Wallace v. Bellamy, 199 N.C. 759, 155 S.E. 856 (1930); 2 C.J.S. Adverse Possession § 78.
[36] To determine the present owners' residual rights it is necessary to determine the extent of the rights received by the power company under the Lilly easement. The Lilly easement is a classic example of an express grant of an easement for a right-of-way which is so indefinitely described as to be incapable of location by a qualified surveyor. It clouds the title to 75 acres of land and would be void for vagueness and indefiniteness but for a rule of law that saves such grant by giving it validity and definiteness as to location and scope by looking to the subsequent behavior of the parties to provide a practical construction furnishing the missing details. See the cases collected in 3 Powell on Real Property ¶ 415 n. 19 (1981). The later use made by the grantee acquiesced in by the grantor or owner of the servient estate is deemed that which was intended and sufficient to locate the way. See Annotation: Locating Easement of Way Created By A Grant Which Does Not Definitely Describe Its Location. 110 A.L.R. 174 (1937). However, contrary to assumptions based on a hurried reading, the Lilly easement is not for a right-of-way 100 feet wide. It is primarily for a single pole electrical transmission line. It also includes supplementary or secondary rights which serve to effectuate the primary right, including the privilege of cutting certain trees on adjacent land. The language which the power company claimed constitutes a 100 foot easement is but a limitation on the secondary right to cut trees: "  provided that clearing of trees is limited to fifty (50) feet on each side of power line and danger timber." That this phrase constitutes a mere limitation on the right to cut trees is more apparent from the original instrument which is a printed form except for the typed paragraph containing the property description and this limiting language. For this and other reasons it was error to find a prescriptive right as to a 100 foot easement in this case. The Lilly easement showed permissive, not adverse use. The Lilly easement did not grant a 100 foot wide easement. If prescription had been properly alleged and proved in this case the extent of the easement so acquired would have been fixed and determined by, and limited to, the actual user under which it was gained. A right-of-way acquired by adverse use is limited to the land actually occupied and used for the prescribed period. See 2 G. Thompson, Commentaries on The Modern Law of Real Property § 349 (1980 replacement by J. Grimes). The parties did not make a pretrial stipulation that the power company had an easement for, or had made either actual or an adverse use of, a 100 foot wide easement but only "that the strip of land under question and allegedly taken is a 100 foot wide electric power transmission easement." Under the Lilly easement the scope of the power company's right-of-way as to Lilly's 1/8th undivided interest in this property is limited to the land actually occupied and used for the single pole transmission line originally constructed under the authority and permission of the Lilly easement. The extent of the right acquired under an indefinite express grant is the same as that acquired by adverse user, being the land actually occupied and used.