NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GREGORY DANA and JESSICA S.    )
DANA, as trustees for the Gregory Dana   )
and Jessica S. Dana Revocable Trust   )
U/A/D DATED April 30, 2002,       )
                              )
        Appellants,        )
                              )
v.                      )    Case No.   2D18-2353
                              )
LORRIE N. EILERS and MARK EILERS,  )
                              )
        Appellees.        )
_____)

Opinion filed September 20, 2019.

Appeal from the Circuit Court for
Hillsborough County; Richard A. Nielsen,
Judge.

Diane H. Tutt of Conroy Simberg,
Hollywood; and Nicole F. Soto of Conroy
Simberg, Tampa, for Appellants.

Daniel J. Fleming and Daniel A. Hoffman
of Johnson, Pope, Bokor, Ruppel & Burns,
LLP; and W. Campbell McLean of
GrayRobinson, P.A., Tampa, for Appellees.


CASANUEVA, Judge.

          Gregory Dana and Jessica S. Dana, as trustees for the Gregory Dana and

Jessica S. Dana Revocable Trust u/a/d dated April 30, 2002, appeal a final judgment

denying the Danas' action for declaratory judgment and granting Lorrie N. Eilers and Mark Eilers' counterclaim for a prescriptive easement. Because the Eilers failed to establish entitlement to a prescriptive easement, we reverse.

## I. FACTS

The parties own adjacent parcels of land on Lake Ellen Drive in Hillsborough County, which parcels were once owned by Gladys D. Braddock as a single ten-acre tract. The Danas own the western five acres, the Eilers own the eastern five acres, and a twenty-foot-wide private driveway extends south from Lake Ellen Drive for 875 feet, centered along the parcels' shared boundary.[1]

Since 1938, the parties and their predecessors in title have used the private driveway to access their properties. The trial court found that the owners of the eastern and western parcels used the driveway as their sole means of ingress and egress to their properties. However, the parties seem to agree that this finding does not mean that the driveway provides the only possible means of accessing the property, as with a landlocked property, or that another reasonable means of access could not be developed.[2]

In 2014, less than a year after purchasing their property, the Danas filed an action for a declaratory judgment seeking to prevent the Eilers from using the portion of the driveway that is within their property boundary. The Eilers, who acquired their

_____

[1]Originally a dirt driveway, the center ten feet of the driveway was paved between 1976 and 1980.

[2]In fact, the Eilers subdivided their parcel, and all lots except theirs use a separate access road.

property in 1998, responded by filing a counterclaim for a prescriptive easement over the disputed property.

Following a bench trial, the trial court denied the Danas' complaint for declaratory judgment and granted a reciprocal prescriptive easement to both the Eilers and the Danas, each for the ten-foot-wide strip of driveway running along the others' property line.[3]

## II. LAW ON PRESCRIPTIVE EASEMENTS

"In Florida an easement is an incorporeal hereditament and, as such, is an interest in land." Crigger v. Fla. Power Corp., 436 So. 2d 937, 941 (Fla. 5th DCA 1983) (footnote omitted). It "is an intangible right to make a certain use of the lands of another." Id. To establish a prescriptive easement, claimants must prove the following:

> (1) actual, continuous, and uninterrupted use by the claimant or any predecessor in title for the prescribed period of twenty years; (2) that during the whole prescribed period the use has been either with the actual knowledge of the owner or so open, notorious and visible that knowledge of the use is imputed to the owner; (3) that the use related to a certain limited and defined area of land or, if for a right-of-way, the use was of a definite route with a reasonably certain line, width, and termini; and (4) that during the whole prescribed period the use has been adverse to the lawful owner; that is, (a) the use has been made without the permission of the owner and under some claim of right other than permission from the owner, (b) the use has been either exclusive of the owner or inconsistent with the rights of the owner of the land to its use and enjoyment, and (c) the use has been such that, during the whole prescribed period, the owner had a cause of action against the user for the use being made.

---

[3]The Danas did not seek a prescriptive easement in their pleadings or at trial.

Dan v. BSJ Realty, LLC, 953 So. 2d 640, 642 (Fla. 3d DCA 2007); see also Downing v. Bird, 100 So. 2d 57, 64 (Fla. 1958); Phelps v. Griffith, 629 So. 2d 304, 305 (Fla. 2d DCA 1993); Stackman v. Pope, 28 So. 3d 131, 133 (Fla. 5th DCA 2010).[4]

It has long been recognized that the "[a]cquisition of rights by one in the lands of another, based on possession or use, is not favored in the law and the acquisition of such rights will be restricted." Downing, 100 So. 2d at 65. Thus, the use or possession of the lands of another "is *presumed to be in subordination* to the title of the true owner, and *with his permission* and the burden is on the claimant to prove that the use or possession is adverse." Id. at 64 (emphasis added); see also Dan, 953 So. 2d at 642 ("Because the law does not favor the acquisition of prescriptive rights, use or possession of another's land is presumed to be subordinate to the owner's title and with the owner's permission."). Consistent with the presumption of permissive use, "[a]ll doubts as to the adverse character of a claimant's pattern of use must be resolved in favor of the lawful owner of the property." Phelps, 629 So. 2d at 306. This presumption "encourages a neighborly consent and indulgence by owners to the use of their land by others by preventing such permissive use from ripening into a right in favor of the wrongful users as against the title of the friendly, congenial landowner." Crigger, 436 So. 2d at 943.

---

[4]Florida jurisprudence has defined the term "easement" as "a privilege without profit which the owner of one tenement has the right to enjoy in respect to that tenement in or over the tenement of another person, whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former." J. C. Vereen & Sons, Inc. v. Houser, 167 So. 45, 47 (Fla. 1936) (quoting Burdine v. Sewell, 109 So. 648, 652 (Fla. 1926)).

The claimant must establish adversity, as well as the other elements of a prescriptive easement, by clear and positive proof, and the elements "cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture." Downing, 100 So. 2d at 64. The Fifth District discussed the reasoning for this elevated burden of proof in Crigger:

> Because under Downing v. Bird prescriptive rights are gained by an adverse user asserting a right based on his own wrongdoing, the law does not favor the acquisition of prescriptive rights and requires a high burden as to allegations and proof in order to overcome historical and well-founded presumptions against wrongdoing.

436 So. 2d at 943.

The enunciated level of proof is consistent with the jurisprudential definition of clear and convincing evidence. See Goss v. Dunbar, 834 So. 2d 185, 187 (Fla. 2d DCA 2002) ("The plaintiff must prove this [adverse possession] cause of action, not by the greater weight of the evidence, but by 'clear and positive proof' or by 'clear and convincing evidence.' "); Bentz v. McDaniel, 872 So. 2d 978, 981-82 (Fla. 5th DCA 2004) (applying "clear and positive proof" and "clear and convincing proof" standards interchangeably in reviewing evidence of adverse possession); Lyndes v. Green, 325 P.3d 1225, 1229 (Mont. 2014) ("A party seeking to establish a prescriptive easement must prove, by clear and convincing evidence, that there was open, notorious, exclusive, adverse, continuous and uninterrupted use for five years."). Clear and convincing evidence or proof is an intermediate level of proof between the "preponderance of the evidence" standard and the "beyond a reasonable doubt" standard. It "entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the

sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." In re Davey, 645 So. 2d 398, 404 (Fla. 1994).

> [T]he facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

Id. (citing Slomowitz v. Walker, 429 So. 2d 797, 800 (Fla. 4th DCA 1983)).

### III. ANALYSIS

With these rules in mind, we turn to the evidence presented at trial to determine whether the presumption of permissive use was overcome by clear and positive proof. In this case, as in many others, it is the element of adversity that is primarily in dispute, and it is Florida's presumption of permissive use that proves fatal to the Eilers' claim of prescriptive easement.[5]

The evidence shows that the disputed property was used as a common driveway by owners of the eastern and western parcels for over sixty years. However, such continuous and long-term open use is not enough—it must also be either exclusive or inconsistent with the owner's use and enjoyment of the land. See Guerard v. Roper, 385 So. 2d 718, 721 (Fla. 5th DCA 1980). "If the use of an alleged easement is not exclusive and not inconsistent with the rights of the owner of the land to its use and enjoyment, it would be presumed that such use is permissive rather than adverse.

---

[5]We decline the Eilers' invitation to rely on other states' laws to affirm the prescriptive easement. Florida's case law lends sufficient guidance for resolving this case; and many states do not share Florida's presumption of permissive use, and thus their case law is not on point.

Hence, such use will never ripen into easement." City of Daytona Beach v. Tona-Rama, Inc., 294 So. 2d 73, 76 (Fla. 1974).

Here, there is no dispute that the use of the driveway was shared, not exclusive. Thus, the Eilers were required to prove that their use of the disputed property was inconsistent with the owners' use or enjoyment thereof. See Guerard, 385 So. 2d at 721 ("The use in common with the owner is presumed to be in subordination of the owner's title and with her permission, and the burden is on the claimant to prove that the use is adverse." (citing Downing)); Gibson v. Buice, 394 So. 2d 451, 452 (Fla. 5th DCA 1981) ("Any use in common with the owner is presumed to be subordinate to the owner's title and with the owner's permission. The burden is on the claimant to show that the use is adverse.").

While none of the witnesses could recall prior owners giving express consent to use of their portion of the driveway, the evidence showed that the Danas and their predecessors allowed the Eilers and their predecessors to freely use the disputed property and that the driveway was used by both parties and their predecessors for the same common purpose.[6] Thus, we find there is evidence of implicit consent, supporting a presumption of permissive use. See Dan, 953 So. 2d at 642-43; compare Phelps, 629 So. 2d at 306 (reversing prescriptive easement where "there was at least implicit evidence of consent by the present and former owners of the land underlying Lemon Patch Road"), with Hunt Land Holding Co. v. Schramm, 121 So. 2d 697, 701 (Fla. 2d

---

[6]According to Mr. Eilers, he asked Mrs. Dibbs, then-owner of the western parcel, if the Eilers could record an easement over the portion of the driveway on her parcel. Mrs. Dibbs declined, saying there was no need because the owners of the parcels had jointly used the driveway since before the Dibbs purchased the property.

DCA 1960) (affirming prescriptive easement where owner presented no evidence to show that consent had been given and relied solely on the presumption of permissive use).[7]

Further, there was no evidence that the Eilers' use of the disputed property prevented the Danas or their predecessors from making use of the property as they desired. See Phelps, 629 So. 2d at 306 ("Although counsel for appellees represented that appellants were 'disallow[ed] the right to plant citrus trees' or make other use of the 15–foot strip, there was no showing appellants had ever attempted or desired to use this portion of their land for anything other than a road."). The Eilers presented no evidence of use of the property in a manner that was against the interest of, or injurious to, the Danas or their predecessors. See Tona-Rama, Inc., 294 So. 2d at 77 (concluding that no prescriptive easement was established where "[t]he use of the property by the public was not against, but was in furtherance of, the interest of the defendant owner. Such use was not injurious to the owner and there was no invasion of the owner's right to the property. Unless the owner loses something, the public could obtain no easement by prescription."); Guerard, 385 So. 2d at 721 ("[T]here is nothing to show that the use made by the appellee was inconsistent with the rights of the owner to her use and enjoyment of the land, which supports rather than overcomes the presumption that any such use is permissive.").

---

[7]The Eilers argue that Hunt is the most persuasive Florida case in support of the finding of a prescriptive easement because Hunt also involved common use facts. However, Hunt is distinguishable in that the land owner offered no evidence that consent had been given, choosing to rely solely on the legal presumption of permissive use. Hunt, 121 So. 2d at 701. Further, Hunt makes a finding that the use was inconsistent with the rights of the owners without further discussion or elaboration, see id., and thus is of limited use in our analysis.

Though it appears that the trial court found evidence of interference in the fact that one car would have to move over some distance to allow another car to pass on the narrow paved portion of the driveway, the occasional "moving over" of the vehicles did not prevent the owners' use of the property as a driveway and is insufficient to establish clear and positive proof of adversity and overcome the permissive use presumption. Instances of moving over to allow another car to pass were far from a feature of the trial, and there was no evidence that this was a common occurrence or caused any injury, burden, or difficulty to the Danas or their predecessors.

The Eilers contend that their use of only this driveway to access their property requires a different result. Under the facts of this case, we disagree. It is undisputed that the property was consistently used as a driveway to access the Eilers' lot for over sixty years. While such evidence supports long-term, open, continuous use by the Eilers and their predecessors, under Florida law, they must still establish adversity. See Dan, 953 So. 2d at 642. The law has placed the burden on the claimant and protects the record title owner and those that may acquire the property in the future. Simply stated, the proof adduced is not clear and positive proof of adversity.

## IV. CONCLUSION

In conclusion, we hold that the Eilers have failed to establish by clear and positive proof all the elements required for an award of a prescriptive easement. At best, the evidence of permission is in equipoise, as none of the witnesses could testify that an owner expressly granted or denied use of the disputed property. However, the owners made the same use of the disputed property, and thus the claimants' use was not inconsistent with the owners' use. All the evidence here is consistent with, and

- 9 -

reinforces, the existing presumption of permissive use. Under such facts, there is a lack of evidence of adversity, and the claimants have thus failed to overcome the presumption of permissive use afforded under Florida law.

The evidence sets forth a time where the property owners involved sought to get along and did not act to confront the status quo by undertaking conduct hostile to the owner. Obviously, the passage of time, change of circumstances, and change of ownership of the respective parcels brought an end to the status of neighborly consent and indulgence. If there is a moral to this story it is that Florida law favors titled owners and rights that appear in the public records that are properly recorded. Failing that, a buyer should follow the old notion of caveat emptor and seek to preserve its desires prior to purchase.

Reversed and remanded.


KELLY and LUCAS, JJ., Concur.